## WOOD *v.* ADLER-GOLDMAN COMMISSION COMPANY.

Opinion delivered June 9, 1894.

*Assignment for creditors—Conveyances held not to be.*

> An insolvent firm gave a creditor a bill of sale of goods in part payment of their debt, and on the same day gave the same creditor another instrument pledging certain choses in action and certain bales of cotton to secure the remainder of the debt and an additional sum which the pledgee agreed to pay to certain creditors of the pledgors. By the terms of the pledge the cotton was to be sold and the choses in action collected within thirty days, and, after paying the debt secured and the usual expenses, the overplus was to be paid to the pledgors. *Held,* that the instruments, whether construed separately or together, do not constitute an absolute conveyance in trust for creditors, within the meaning of the statute regulating voluntary assignments.

Appeal from Logan Circuit Court.

*Archibald S. McKennon,* Special Judge.

*Jos. M. Hill* for appellants, *Anthony Hall* of counsel.

1. This case falls squarely within the rule of *Richmond* v. *Miss. Mills,* 52 Ark. 30, and *Fecheimer* v. *Robertson,* 53 *id.* 101, and later cases following them. See, also, 49 Fed. Rep. 401. Parol testimony is admissible to assail the instruments, but not to bolster them up. It can be shown that the parties intended them to operate otherwise than as expressed on their face, but the parties holding under them cannot give their legal construction of what the instruments are. 49 Fed. 401; 56 Ark. 320; 19 S. W. 963; 46 Ark. 127. The fifth instruction was fatal error.

2. The instruments on their face constituted an assignment. If an assignment, it is void. 52 Ark. 30; 54 *id.* 6. The instrument called "a pledge" raises a fund to pay debts due Adler-Goldman Commission Co. and other creditors, thereby making Adler-Goldman

Commission Co. a trustee for this purpose. 4 Oh. St. 608; *Ib.* 45; 15 S. E. Rep. 17; 5 Oh. St. 611; 18 S. W. 756; 54 N. W. 828; 51 *id.* 899; 19 Pac. 809; 15 Atl. 871; 6 Watts, 182; 74 Penn. St. 472; 85 *id.* 235; 117 *id.* 611; 12 Atl. 741; 13 *id.* 184; 33 N. E. 716. The commission company, having received the property in consideration that they would pay certain creditors, is turned into a trustee for their benefit, and these creditors could sue them for the amounts of their debts, provided the property conveyed was equal in value to the debts assumed. Cases *supra.*

3. The verdict is without evidence to support it. There is no legal evidence to support it.

*Oscar L. Miles* for appellee. *John S. Little* of counsel.

1. An assignment is defined in Burrill on Assignments (4th ed.), p. 3. It contemplates the intervention and agency of a trustee, though none be named. Hence, conveyances directly to creditors in payment or by way of security for their own debts solely, are not, generally, assignments for the benefit of creditors. 52 Ark. 30. The test is laid down in 53 Ark. 105 and 54 *id.* 234. Mr. Justice Sandels says: "We do not hold that the giving of one or more mortgages, the confession of judgments, or other means adopted to give security or preference, constitute necessarily, or even ordinarily, an assignment; but we do hold that where one or more instruments are executed by a debtor, in whatsoever form or by whatsoever name, with the intention of granting the property conveyed absolutely *to the trustee* to raise a fund to pay debts, the transactions constitute an assignment." In *Robson* v. *Tomlinson,* 54 Ark. 234, Mr. Chief Justice Cockrill says: "The controlling guide, according to the previous decision of this court, is, was it the intention of the parties, at the time the

instrument was executed, to divest the debtor of the title, and so make an appropriation of the property to raise a fund to pay debts?" In *Fecheimer* v. *Robertson*, 53 Ark. 105, Mr. Justice Sandels says: "The test is, can other creditors call the grantee or person stipulated for by the grantor, to account for the proceeds of the property? If they can, then the conveyance was not solely for the benefit of the grantees, and conveyances of this kind would constitute an assignment." If the grantees, or the parties to whom, by arrangement with the grantors, the property is given, are not liable to account to other creditors for the proceeds of the sales, then there is no trustee and no assignment." In this case there was but a *single transaction*, although it required several conveyances. No *trustee* is mentioned, nor is one contemplated. Nowhere do the conveyances disclose any interest of any individual save only the commission company. By no provision does it appear, directly or by implication, that any creditor can hold the grantee accountable for the property or its proceeds; and nowhere does it appear that "the property was conveyed to raise a fund to pay debts."

2. The attendant circumstances show no intention that the conveyances should operate as an assignment. 52 Ark. 30, and cases *supra*.

3. The testimony of Goldman and Oppenheimer, as to what was their purpose in making the sale and transfer, is clearly admissible. Starkie, Ev. (10th ed.) p. 652.

4. 56 Ark. 314 is a case like this in fact and in law, and would seem conclusive.

*Rose, Hemingway & Rose* also for appellee.

Every conveyance where a trustee is named or contemplated does not constitute an assignment. 56 Ark. 315. Adler-Goldman Commission Company *assumed absolutely to pay* the debts mentioned, and *they did pay*

*them with* their own funds, without waiting to sell the property ; they were trustees for nobody. They *agreed to pay* these debts, in the instrument. But the evidence places it beyond question, if there were any doubt about it. 52 Ark. 93 ; 1 Dr. & W. 366 ; 46 Ark. 129. In this case there was no room for construction. The instrument is a plain assumption of the debts, followed by payment out of appellee's own funds. There was no trust relation with anyone—no trust in the case. There being no trust, there can be no assignment. 53 Ark. 101 ; *Ib.* 538.

*Jos. M. Hill* for appellant in reply. *Anthony Hall* of counsel.

Cite 33 N. E. 716 ; 9 So. Rep. 79 ; 52 Ark. 48.

RIDDICK, J. The questions to be determined in this case arose in an action of replevin brought by the appellee, the Adler-Goldman Commission Company, a corporation organized under the laws of Missouri, against O. C. Wood, the sheriff of Logan county, to recover a stock of merchandise, store fixtures, etc., which said sheriff had seized as the property of Oppenheimer & Co., under writs of attachment against them. The appellee claimed to have purchased said property and certain lands from Oppenheimer & Co. for the consideration of eight thousand and five hundred dollars, which sum it placed as a credit on the indebtedness of Oppenheimer & Co to them. Oppenheimer & Co. were insolvent, and, before said credit was entered, were indebted to appellee in a sum amounting to over fifty thousand dollars, in addition to indebtedness to other parties. On the same day that the bill of sale for the property in controversy was executed, Oppenheimer & Co. executed another instrument in which, after reciting that they were indebted to appellee in a large amount, they say : "And also for the further consideration that the said Adler-Goldman Commission

Company agree to pay the following named parties, to whom we are justly indebted as per amount set opposite their names : (Here follows a list of certain creditors and amounts due them).   Now, therefore, for the purpose of securing the same, we hereby transfer to the said Adler-Goldman Commission Company, by way of pledge, the choses in action described in the schedule hereto annexed; also twelve hundred and sixty-one bales of cotton now in their hands and in transit, consigned to them, said cotton to be sold by them in the usual way within thirty days from this date, and the net amount, after deducting usual expenses, to be credited to above indebtedness.   If, after thirty days from this date, any of said choses in action should remain uncollected, and any of our debts unpaid, we hereby authorize the said Adler-Goldman Commission Company to sell said choses in action at public sale for cash at the front door of our store house in the town of Paris, Arkansas, after giving ten days notice of the time, place and terms of sale, by advertisement in some newspaper published in the county of Logan, Arkansas, or by written or printed notices posted in at least ten conspicuous places in said county, and out of the proceeds of said sale the said Adler-Goldman Commission Company shall pay our debts due them as above, so far as said proceeds will extend, rendering the overplus to us.   Witness our hands this 11th day of January, 1892.   (Signed) Ike Oppenheimer, S. Stern-berg, of the firm of Oppenheimer & Co.''

Appellant contends that these two instruments—the bill of sale of the property in controversy and the transfer of the cotton and choses in action—having been executed on the same day, and for the purpose of carrying out a preconceived intention, must be construed together, and that they amount in law to an assignment for the benefit of creditors, and are void because not made in conformity to the statute.   Conceding that

these instruments must be construed together, as part of the same transaction, the question for this court to determine is whether, when thus construed, they constitute an assignment for the benefit of creditors.

By the term "voluntary assignment" is meant a conveyance of some or all of a debtor's property in trust for the purpose of being disposed of by the trustee to raise a fund to pay debts, as distinguished from a sale to a creditor in payment of his claim, and from a pledge or hypothecation as a security, in the nature of a mortgage. Anderson's Dictionary of Law, 83; *Dias* v. *Bouchaud*, 10 Paige, Ch. 461.

"To constitute an assignment, the property must be conveyed absolutely to raise a fund to pay debts." *Richmond* v. *Mississippi Mills*, 52 Ark. 30.

One of the conveyances mentioned above purported to be a bill of sale of the stock of merchandise and chattels in controversy, in part payment of the debt due from Oppenheimer & Company to appellee. The other purported to be a pledge of certain choses in action and bales of cotton to secure the remainder of the debt due appellee, and also for an additional sum which, in consideration of the making of such pledge, appellee agreed to pay to certain creditors of Oppenheimer & Company. Oppenheimer & Co. had refused to make these transfers until appellee expressly agreed to pay these sums for them to the creditors designated. Having agreed to pay these sums as an inducement and a consideration for these conveyances, after they were executed, appellee was in the same position as if Oppenheimer & Co. had paid it so much money for the use and benefit of the creditors. The statute regulating assignments for the benefit of creditors was not intended to prevent embarrassed creditors from selling property to pay debts, nor from mortgaging or pledging it for that purpose. A debtor, when he has pledged, mortgaged,

or sold his property to obtain money to pay debts, may, if he chooses, allow the lender of the money to distribute the fund among the creditors, provided the transaction is free from any dishonest intent. Although, in such a case, the lender would hold the fund in trust for the creditors, and could be compelled to perform the trust, the statute regulating assignments for the benefit of creditors would not apply, for the reason that, in such a transaction, there would be no conveyance of property in trust for the purpose of being disposed of by the trustee to raise a fund to pay debts, and, without such a conveyance of property in trust for the purpose of being disposed of by the trustee, there is no assignment. It is only where property is conveyed to another in trust to be disposed of by him for the purpose of raising a fund to pay debts that the statute applies and undertakes "to regulate, direct and secure a performance of the trust." Burrill on Assignments, (6 ed.) 24.

In the case at bar, the property was not conveyed or delivered to appellee to be disposed of for the purpose of raising a fund to pay creditors, nor to be held in trust for creditors. A portion of it was sold to appellee in part payment of its debt, and the remainder delivered as a pledge to secure the balance of the debt due appellee, including the sums it had assumed and agreed to pay other creditors. After appellee had received the property, under this agreement, the creditors whose debts he had assumed could have enforced the agreement by an action at law to compel it to pay the sums of money it had agreed to pay, which sums would be treated as a fund received by appellee for the use and benefit of these creditors. *Keller* v. *Ashford*, 133 U. S. 610; *Mellen* v. *Whipple*, 1 Gray, 322; *Carnegie* v. *Morrison*, 2 Met. 381; 1 Parsons on Contracts (8 ed.), 468, and authorities cited.

The right of these creditors to recover was not limited to the property pledged or its proceeds; and that this was the understanding of the parties is shown by the action of appellee, for it paid the assumed debts at once, without waiting to dispose of the property.

It is a general rule of law that no one can sue on a contract to which he is not a party, but there are exceptions to the rule. The cases from the Supreme Court of Pennsylvania, cited by counsel for appellant, only lay down the exception mentioned above—that when one receives money or property upon a promise to pay the debt of a third person, such person can maintain an action on such promise. "These cases," say the court in *Delp* v. *Bartholomay Brewing Co.* 15 Alantic Rep. 871, "are cases in which the third person, although not a party to the contract, may be fairly said to be a party to the consideration on which it rests." In that case Delp received from Bingham & Spencer, proprietors of the Hotel Albemarle, its entire stock and assets, under an agreement that he would pay the debts of said Bingham & Spencer. One of the creditors brought an action on this promise, and it was sustained. The court, speaking of Delp, said "he assumed the payment of these debts, and the property was put into his hands for this express purpose. Whether thereby a technical trust was created is not material. It has always been held that the creditor in such a case has a right of action to compel payment in accordance with the agreement." Although it may be true that cases can be found holding that, where property is conveyed to one under promise that he will pay the debt of another, he will be treated as a trustee until he performs his promise and pays the debt, yet such transfers do not come with the meaning of our statute of assignments, unless the conveyance is made to the grantee for the purpose of having him dispose of the property to raise a fund to pay debts.

In the case of one who sells property to another upon the consideration that he will pay certain debts of the vendor, the transaction, if without fraud, is distinguished from an assignment by the fact that the title passes absolutely to the vendor, and, after he pays the debts, there is no resulting trust in favor of the vendor for the residue of the property, or its proceeds, as there always is in cases of assignment. When one pledges or mortgages property to another for the purpose of securing a debt, or to obtain money to pay a debt, it is distinguished from an assignment by the fact that a beneficial interest remains in the mortgagor or pledgor, and he has the right to redeem, and an assignor does not have. These distinctions are elementary, and may be found in Burrill on Assignments, or any other text book on the subject of assignments, with authorities collated. In the case of *Goodbar* v. *Locke*, 56 Ark. 315, a pledge of choses in action for the benefit of certain creditors was held not to be an assignment. Justice Hemingway, who delivered the opinion of the court, said: "As the debtors were not by the terms of the instrument divested of the beneficial ownership, it was not an assignment; and, although the debtors may have had no reasonable hope of paying the debts and retaking the collaterals, the property remained in them, and could be reached by unsecured creditors as other equitable assets may be."

In the case at bar the right to redeem within thirty days remained to Oppenheimer & Co. in the property pledged.

Some of the cases from the supreme court of Ohio, cited by counsel for appellant, may seem to hold that such transfers as those under consideration would, in that State, constitute an assignment for the benefit of creditors, but those cases are, to a certain extent, governed by a statute of that State which, in effect, provides

that all conveyances by debtors to trustees in contemplation of insolvency, with the intention to prefer one or more creditors, shall be held to inure to the benefit of all the creditors in proportion to their respective demands. All conveyances coming within the meaning of this statute are held in Ohio to be assignments, and the property conveyed inures to the benefit of all the creditors. *Bagaley* v. *Waters*, 7 Ohio St. 359, where the statute is quoted.

After a due consideration of the matter and of the authorities cited by the learned counsel for appellant, we feel convinced that this pledge was made, not to secure the creditors named in the instrument, but to secure the debt due appellee, including the sums assumed by him; that a right of redemption remained in Oppenheimer & Co. after the execution, and that these instruments, whether construed separately or together, are not conveyances in trust for creditors, within the meaning of our statute regulating voluntary assignments.

In the absence of any evidence tending to show a fraudulent intent, the determination of this question disposes of the case, and we deem it unnecessary to discuss the other point raised. The judgment of the circuit court was, in our opinion, right, and is therefore affirmed.

Judges Battle and Hughes concur in the judgment, but not in the reasons given.

Opinion on rehearing, delivered July 14, 1894.

RIDDICK, J.  In his brief in support of the motion for rehearing filed in this cause, counsel for appellant insists that the fact that the cotton mentioned in the conveyance was to be sold within thirty days, and also that the choses in action were to be collected within thirty days, shows, in connection with the other facts in

the case, that these conveyances constituted an assignment. These facts were not overlooked by the court.

The cotton had already been consigned to appellee for sale at the time these instruments were executed, and they only stipulated that the cotton was still to be sold by appellee "in the usual way within thirty days," and that the proceeds should be applied on their indebtedness to appellee, including the debts assumed to be paid by appellee. The right to sell this cotton and to collect the choses in action given appellee was not as a trustee of the creditors whose debts it had agreed to pay, but as the cotton factor and agent of Oppenheimer & Co. The money to be realized was, subject to the lien created by the pledge, the money of Oppenheimer & Co., and, under the provisions of the pledge, was to be paid on the debt due appellee, and to go towards the redemption of the other property pledged. In deciding this case, we based our opinion mainly on the fact, as found by a majority of the court, that the property in question "was not conveyed or delivered to appellee to be disposed of for the purpose of raising a fund to pay creditors, nor to be held in trust for creditors." After considering the able argument of counsel for appellant, we remain of the same opinion still, and the motion to rehear is overruled.