## LYNN et al. v. BRENNER.

No. 19385. Opinion Filed July 15, 1930.

Rehearing Denied Oct. 7, 1930.

John W. Tillman, Fred A. Tillman, and Welcome D. Pierson, for plaintiffs in error.

Leahy, MacDonald & Files, for defendant in error.

REID, C. The plaintiff began this suit on February 16, 1927, against the defendants to set aside a certain deed dated January 13, 1926, made by the defendant John P. Lynn to his wife, Mary A. Lynn, conveying certain real estate in Osage county, Okla., and also a power of attorney made at the same time by said defendants to the defendant L. V. Stangl, it being alleged that the plaintiff was a creditor of the defendant John P. Lynn at the time said conveyances were made and that the conveyances were without consideration and were executed by John P. Lynn for the purpose of hindering, delaying, and defrauding his creditors.

The trial court properly treated the case as one in equity, heard it without a jury, and rendered judgment for the plaintiff canceling and setting aside the deed, and the defendants appealed. The parties will be referred to as they stood in the trial court.

The sole question presented here is whether the judgment is clearly against the weight of the evidence. If it is, we should reverse the case; otherwise it must be affirmed.

The plaintiff first introduced as a witness the defendant John P. Lynn, who testified that when he executed the conveyance to his wife on the 13th day of January, 1926, he attempted to convey all his property to her.

The plaintiff testified that on January 11, 1927, he got a judgment against Lynn in the district court of Osage county for $2,000 and interest, and that no part of it had been paid. He showed by the records of the district court of Osage county that Lynn

was sued by the state of Oklahoma upon five appearance bonds upon which he was surety for defendants. The dates when the respective petitions were filed and the judgments entered, and the amounts of the judgments, being as follows: (1) Petition filed January 24, 1925, in No. 9352, judgment for $500 April 6, 1926; (2) petition filed January 24, 1925, in No. 9349, judgment for $500 April 6, 1926; (3) petition filed March 24, 1925, judgment for $1,000 January 7, 1926; (4) petition filed December 11, 1926, on the appearance bond of Harve Caughey, for $10,000, forfeited January 13, 1926; and also the proceedings in the civil cases of (a) Wagoner v. Lynn et al., filed March 6, 1925, showing judgment for $689.05 November 30, 1925; and (b) Carr v. Lynn, filed December 24, 1925, and judgment for $720.50 October 11, 1926. The plaintiff introduced the entries of the judgments or the judgment docket, which disclosed no credits.

The defense of the case rested mainly upon the testimony of Lynn, his wife, and his former attorney living at Pawhuska, and the two attorneys living in Oklahoma City whom Lynn and his wife consulted before the deed was made. There were also introduced by the defendants records from the Osage Indian Agency showing certain payments of annuities.

Lynn and his wife were married in 1895. They had five children. Mrs. Lynn and each of the children were on the Osage Indian rolls, had allotments of land and were entitled to annuity payments. Lynn collected and kept her land rentals from 1906, when the lands were allotted. There is testimony that this was more than $1,000 per year. He also collected and used the annuity payments of Mrs. Lynn until 1919, amounting to about $24,000. The Santa Fe Railroad built across her land in 1918, and for this she received $11,000, which she turned over to Lynn. There accumulated in the Osage agency to their minor allotted children the approximate sum of $25,000, designated as the Moshier money, which was, under the law, payable one-half to each of the parents; and this whole amount went into the hands of Lynn in 1924. The evidence is sufficient to show that during these years more than $40,000 in all, which belonged to his wife, came to Lynn. The court in discussing the cause at the end of the testimony and before judgment was rendered stated that the evidence showed that at least $30,000 or $40,000 of Mrs. Lynn's money had come to Lynn by reason of Mrs. Lynn's Osage Indian blood, but he

seems to have concluded that it was a gift for the reason that, as he viewed the evidence, there was no explicit and definite promise to repay when the money was received.

We think the testimony of Lynn and his wife shows conclusively that at least when the larger amounts we have mentioned came to him he promised to return them to her, and also that the investments he made with this money would be for her benefit. He testified that the property conveyed by the deed in question was purchased mostly with money obtained from her. The value of the land is not shown, but as no point is made on that, we think it fair to presume that it did not exceed the amount Lynn received from his wife prior to the deed. The attorney at Pawhuska who represented Lynn during the time he was handling the money we have mentioned testified to facts tending to show that Lynn had received it, the money, upon an understanding to repay, about the amount as claimed by them.

In the latter part of 1925 Lynn was in bad health and away from Oklahoma some of the time and in order to facilitate the sale of the property, according to the testimony of him and Stangl, he made a deed on December 26, 1925, to the defendant Stangl, so that Stangl could make sales and transfer the property while Lynn was away from home. Mrs. Lynn testified that when she learned of this deed she insisted that the property should be deeded to her, and it had been bought with her money. Lynn and his wife were then in Oklahoma City, where he was in a hospital for treatment. They consulted attorneys about the matter, and one of the attorneys went to Pawhuska to further investigate the situation. These attorneys testified that from their investigation they concluded that Lynn owed his wife a large amount, one of them saying approximately $40,000. They then advised that Stangl deed the property back to Lynn and that Lynn then convey it to his wife in payment of his indebtedness to her. They prepared the instruments accordingly, and they were executed in Oklahoma City on January 13, 1926. Mrs. Lynn testified that she knew nothing of the suits against Lynn, and he said the same. There is nothing to show otherwise, except the inference which might be drawn from their relation, which is a proper element to be considered. But there is no affirmative evidence showing that Mrs. Lynn had ever heard of Lynn's financial involvements.

It is our duty to examine the evidence in this case under sections 5271 and 6020, C. O. S. 1921, and determine whether it shows that the deed in question was made without a fair and valuable consideration, or made in bad faith, or for the purpose of hindering, delaying, or defrauding the creditors of Lynn. If there is evidence sufficient to establish either of these facts, the judgment must stand. These statutes are declaratory of the common law and evidently announce the law on which plaintiff brought his suit and recovered the judgment.

Conveyances from husband to wife have been the subject of numerous attacks by creditors in which they have sought to set aside the instruments under statutes similar to ours, or, in the absence of a statute, under the doctrine of the common law. But it is proper to here observe that, though there are some exceptions, in practically all of the cases where the deeds have been canceled it was upon the conclusion by the courts that in fact the husband had never received from his wife a sufficient amount of money to constitute a fair consideration for the deed. In this case it must be conceded that he received the money, but it is contended that it was a gift.

From our consideration of the evidence we have come to the conclusion that at least the items of $11,000 and $12,000 which came to Lynn from his wife were not intended by her to be gifts, nor accepted by him as such, but created debt by him to her. Their testimony as to this is not disputed by any other evidence in the case, and not being inherently improbable, it cannot be disregarded, especially as they were corroborated in this by the attorney who represented them at that time. If these amounts were not gifts, then they constituted debts, and if debts, though due to his wife, they had the same dignity and standing in law as a debt due her from any other person. The fact that a debt actually exists and the good faith of the party making the conveyance to pay the debt constitute the test; and whether applied to a conveyance made by a party to his wife or to any other person, the rule is the same. The relation of the parties is only a fact to be considered in determining the bona fides of the transaction.

While the remarks of the trial court made before rendering judgment in the case, as shown in the record, are not to be taken by this court as a substitute for or as the findings of fact and conclusions of law by the court, provided for by the statute, yet

they may be considered here as throwing light upon the reasons he had for entering the judgment, and be helpful here in arriving at a proper decision in the case. The court seems to have based his judgment largely on his conclusion that the evidence did not show any definite promise by Lynn to repay the money when he received it from his wife, as heretofore indicated. We are inclined to disagree with the court as to the effect of the testimony in this respect; and we think the evidence brings the case clearly within the rule announced in the syllabus in the case of Sykes v. City Savings Bank, 115 Mich. 562, 69 A. S. R. 562, where it was said:

"If a wife advanced money to her husband with the expectation that he will repay it, but without a special agreement as to the time of repayment, the transaction does not constitute a gift, unless the facts are such as to show an estoppel against her."

There is no claim of estoppel here made against the wife.

It is unnecessary to go further than the decisions of this court in order to find the law by which this case should be decided. In the case of Swan v. Bailey, 71 Okla. 30, 174 Pac. 1065, a trustee in bankruptcy sought to set aside a deed made by a party to his wife more than four months prior to the bankruptcy proceedings, and therefore coming within the rule applicable to this case. In passing on the question as to whether the trial court erred in sustaining a demurrer to plaintiffs' evidence this court used the language peculiarly applicable to this case:

"It is well settled that a husband may, for a valuable consideration, even though insolvent, convey property to his wife, where there is an adequate consideration paid from the wife's separate estate, or where the consideration is a debt owing by the husband to the wife, and the value of the property is not materially in excess of the debt.

"The mere relationship of husband and wife between the parties to a transfer is not sufficient ground for setting aside a conveyance, although the question of the circumstance of such relationship may be considered on the question of fraud. Wimberly v. Winstock et al., 46 Okla. 645, 149 Pac. 238; Potts v. Rubesam, 54 Okla. 408, 156 Pac. 356. Transactions between husband and wife to the prejudice of the husband's creditors will be closely scrutinized to see that they are fair and honest, and not merely contrivances resorted to for the purpose of placing the husband's property beyond the reach of creditors. Where the conveyance is made, even though by an insolvent, for the purpose of discharging an indebtedness incurred in good faith, and the bona fides of the consideration is not attacked, other than by possible inference or a belief that possibly the transaction was colorable, courts will not undertake to defeat the will of such grantor, even though it have the effect of preventing other creditors from subjecting the property in satisfaction of their indebtedness."

The following other cases by this court announce the same doctrine: State ex rel. Mothersead v. Mobley et al., 112 Okla. 152, 241 Pac. 155. Vacuum Oil Co. v. Quigg, 127 Okla. 61, 259 Pac. 858.

One of the leading cases by the Supreme Court of the United States on the question here involved is Bean v. Patterson, 122 U. S. 496, 7 Sup. Ct. 1298, 30 L. Ed. 1126. The court in the syllabus said:

"The court, being satisfied that the conveyance of real estate by the husband when insolvent, to a trustee for the benefit of his wife (which is assailed in this suit), was made in good faith to secure an indebtedness from him to her for sums previously realized by him from sales of her individual property, sustain it, as coming within the doctrine, well settled here, that while such a deed, made under such circumstances, is not valid if its sole purpose is to secure the wife against future necessities, it is, if made to secure a prior existing indebtedness from the husband to the wife, as valid as if made to secure a like indebtedness to any other of his creditors."

This is not a suit by a proper party to set aside a conveyance made by a bankrupt as being in violation of the National Bankruptcy Act prohibiting preferences, but the case is governed by our state statutes and the common law. There seems here applicable the language used in Bump on Fraudulent Conveyances (4th Ed.) page 187, as follows:

Sec. 167. "By virtue of his absolute dominion over his property, a debtor, however, may either give or allow a preference. It is not part of the policy of the statute to prohibit its application to the payments of one debt rather than another. The maxim vigilantibus non dormientibus leges subservient applies. Hence it is that a creditor who can secure a sufficiency, according to law, to satisfy his claim, is entitled to hold it against other creditors. This right, moreover, is not affected by the debtor's insolvency, or the preferred creditor's knowledge of such insolvency."

Sec. 168. "The fact that a suit is pending, or that the transfer includes all the debtor's property, or all the property which is not exempt from execution or that

other creditors lose their debts by reason of, the debtor's inability to meet all the demands against him, does not necessarily affect the validity of the preference. There is a distinction to be observed between the effect of a transfer by a debtor in failing circumstances made to pay one or more of his debts, and that intent to hinder, delay, or defraud his other creditors against which the statute is aimed. The effect of the preference may be to delay them, or even to prevent them from obtaining payment at all; but if the motive is to pay the preferred debt, the transaction is not invalidated. The statute is aimed only at intended fraud, but the payment of a debt to one creditor is no fraud upon the other creditors—no legal injury to them."

Th plaintiff claims as a strong circumstance in his favor the fact that the deed was made the same day the Caughey bond was forfeited, and the trial court indicated that he believed this forfeiture caused the deed to be made. (The court stated no judgment was taken on the bond, as the defendant was returned and a small amount paid.) There is no evidence in the record that Lynn or his wife actually knew of the forfeiture at that time, for it was taken at Pawhuska and the deed was made at Oklahoma City. But, then, if he had known of the forfeiture, it would have been only a circumstance for the plaintiff and not controlling. It seems that Brenner had not even filed suit on his debt when the deed was made.

It is our conclusion that a bona fide debt existed from Lynn to his wife, sufficient as a fair consideration for this deed. And though she was his wife, he had a right to pay her by the conveyance to her of property. If he had paid any other of his creditors in the same manner, it would have been our duty to hold the conveyance good. The law does not provide an exception against the wife. If the motive in making the conveyance was to pay the debt, then it must stand. We think the evidence shows it was. What was further said by this court in the case of Swan v. Bailey, supra, is here applicable:

"While the question was one of fact, as contended by counsel, it was incumbent upon the trustee (plaintiff) to prove that the conveyance was either made without a fair and valuable consideration, or in bad faith, or for the purpose of hindering, delaying, or defrauding the creditors of the grantor. True, it was not necessary that fraud should be established by direct proof; for such purpose, it was competent to resort to circumstantial or presumptive evidence. But the record contains neither evidence nor inferences of fact sufficient to support a verdict for the plaintiff."

We have concluded that the judgment of the trial court is clearly against the weight of the evidence. The case is reversed, with directions to enter judgment for the defendants.

BENNETT, EAGLETON, HERR, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 12 R. C. L. p. 515; R. C. L. Perm. Supp. p. 3138. (2) 12 R. C. L. p. 589, et seq. R. C. L. Perm. Supp. p. 3157. See "Fraudulent Conveyances," 27 C. J. § 268, p. 562, n. 75; § 363, p. 613, n. 82; § 408, p. 643, n. 79; § 775, p. 828, n. 12.