UNITED STATES v. GOTWALS et al.
(two cases).
Nos. 3287, 3288.

Circuit Court of Appeals, Tenth Circuit.
July 19, 1946.

Rehearing Denied Aug. 21, 1946.

PHILLIPS, Circuit Judge, dissenting.

———◆———

Fred W. Smith, of Washington, D. C. (J. Edward Williams and Roger P. Marquis, both of Washington, D. C., and Cleon A. Summers, U. S. Atty., of Muskogee, Okl., on the brief), for appellant.

Malcolm E. Rosser, of Muskogee, Okl., for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

The question in these cases is whether under 31 U.S.C.A. § 191, the United States is entitled to have its claim against H. G. House satisfied out of a fund which he assigned to Charles P. Gotwals, one of the appellees herein.

Section 191 provides that: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

The facts in the case are substantially these: The heirs of Eastman Richards, a full-blood Creek Indian, brought an action against H. G. House for an accounting. The United States intervened in this action.[1] A number of other actions of like nature were pending against House. The law firm of Gotwals, Killey and Gibson represented House in all this litigation. During all the time this litigation was pending, the case of In re Jackson Barnett, another Indian case, was also pending in the

---

[1] Whenever necessary, this case will be referred to as the House case.

federal courts.[2] House was one of the attorneys of record in that litigation. On October 12, 1942, the trial court filed findings of fact and conclusions of law in the House case, clearly indicating that a judgment would be entered in favor of the United States and against House, for $76,-860.84. House and Charles Gotwals were present at the time of the making of these findings of fact and conclusions of law. On October 27, 1942, House executed the assignment in question, assigning to Gotwals all fees due or to become due him in the Barnett case. Thereafter, on November 7, 1942, judgment was entered in the House case in favor of the government for $76,860.84. Execution was issued on this judgment and was returned with the notation, "Nothing found."

On June 23, 1943, the trial court entered judgment in the Barnett case, fixing the fees of the various attorneys who had participated in that litigation. House's fee in that case was fixed at $13,582.79. Thereafter the United States, acting through the Secretary of the Interior, paid into the registry of the court a sum sufficient to satisfy the judgment for attorneys' fees, with the exception of the amount due House. This sum was withheld. The government filed substantially identical petitions in both the House and the Barnett cases, in which it was alleged that House was insolvent at the time he made the assignment to Gotwals; that at such time he was aware of the findings of fact and conclusions of law which had been made in the House case which established his liability to the government; that the purpose of the assignment was to defraud the government as a judgment creditor; and that the United States was entitled to priority to the fund due House in the Barnett case, in payment of its claim. The prayer of the petitions was that the United States be allowed a credit in the sum of $13,582.79 in the Barnett case, and that House be allowed a like credit on the judgment in the House case. Gotwals asserted his claim under the assignment and denied the preferential claim of the government to the amount due House in the Barnett case.

The trial court sustained the validity of the assignment, denied the claim of the government, and entered judgment accordingly. The government has appealed.

■ The charge of fraud in the execution of the assignment was not sustained. There was ample consideration for the assignment to Gotwals. On the other hand, it is equally clear that the purpose of the assignment was to prefer Gotwals over the United States in the application of the payment of the sum in question as between creditors. House testified that he did not have sufficient property to pay Gotwals and also to pay the government's judgment, and that he wanted Gotwals to have his money in preference to the government.

■ The statute does not create a lien in the government. It merely entitles it to priority in the payment of its claim when the conditions of the statute have been brought about. Whether the preferential status of the government was brought into focus under the statute in question depends upon whether House was insolvent, and if he was, whether the assignment was a voluntary assignment within the meaning of the Act, and if it was not, whether the assignment constituted an act of bankruptcy as contemplated by the statute.

■ The mere inability of a debtor to discharge his debts in the ordinary course of business does not constitute insolvency under the statute. A debtor is insolvent within the meaning of the statute if, not having sufficient property to pay all his debts, he either makes a voluntary assignment thereof or commits an act of bankruptcy. House by his own admission did not have sufficient property to pay all his debts. It is also quite clear by his own testimony that he assigned substantially all his property, subject to the payment of his debts, or that, in any event what remained was wholly insufficient not only to pay the balance of what was due Gotwals for services which had been rendered or which were to be rendered, but also to pay any portion of the government's judgment. The assignment was not the voluntary assignment contemplated by the statute, because

---

[2] This case will be referred to as the Barnett case.

it was not made or intended to be made for the benefit of his creditors.[3] But the assignment to Gotwals with intent to prefer him at a time when House was insolvent within the meaning of the bankruptcy act constituted an act of bankruptcy.[4] The factors which brought the statute into play therefore existed when House, while insolvent, transferred substantially all his property subject to the payment of his debts to Gotwals, with the admitted intent to prefer him over his other creditors and the government was therefore entitled to the payment of its claim out of the assigned assets in preference to Gotwals.

■ It is clear from what has been said that if a bankruptcy proceeding had been instituted against House or if a general assignment had been made of all of his property to one charged with the payment of his debts, the government would have been entitled to the satisfaction of its claim in preference to the claim of Gotwals. But it is urged that the government may establish its right of priority only in such proceedings, and may not assert it in the manner attempted herein. No case is cited to support this contention and our search has failed to reveal one in which the precise question was in issue.

The cases relied upon to establish this contention, are all cases in which the debtor's property had been given to another charged with its administration for his creditors, either by some form of assignment or other liquidation proceeding. While some of these cases contain general statements which considered alone could be construed to imply that the government's claim to priority must be asserted in such a proceeding, such expressions must be considered in the light of their factual setting. As stated by the Supreme Court in Bramwell v. United States Fidelity & Guaranty Co., 269 U.S. 483, 489, 46 S.Ct. 176, 177, 70 L.Ed. 368: "It is a rule of universal application that general expressions used in a court's opinion are to be taken in connection with the case under consideration." None of these cases turned upon the decision of the precise point now urged.

■ The purpose of the statute is to give priority of payment to the government over all other creditors in situations covered by the act. It has been held without exception that the act is to be liberally construed to effectuate that purpose.[5]

It is of course obvious that where the government seeks to enforce its right of priority as against property in the possession of a third party, it must take appropriate steps to bring the property before a tribunal having jurisdiction to administer it between conflicting claimants. But to hold that the government was required to institute an involuntary bankruptcy proceeding against House in order to establish its right of priority to a fund in its possession and was compelled to pay that fund to the trustee in bankruptcy and then ask for its return, when there was pending a proceeding in the United States District Court which involved the administration of the identical fund and in which a complete adjudication of the rights of priority as between different claimants could be made, would be placing a strained and narrow construction upon the act, and one which in our opinion is not compelled by any decision of the Supreme Court.

The judgment of the trial court is accordingly reversed and the cause is re-

---

[3] A voluntary assignment has been defined as a transfer without compulsion of law by a debtor of his property to an assignee in trust, to apply the same or the proceeds thereof to the payment of his debts and to return the surplus, if any, to the debtor. See Farwell v. Nilsson, 133 Ill. 45, 24 N.E. 74; Dias v. Bouchaud, 10 Paige, N.Y., 445; Wood v. Adler-Goldman Comm. Co., 59 Ark. 270, 27 S.W. 490; Watson v. Willerton, 258 Ill.App. 390.

[4] A person is insolvent within the meaning of the bankruptcy act "whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." 11 U.S.C.A. § 1(15).

[5] Beaston v. Farmers' Bank, 12 Pet. 102, 134, 9 L.Ed. 1017; Bramwell v. United States F. & G. Co., 269 U.S. 483, 46 S.Ct. 176, 70 L.Ed. 368.

manded with directions to enter judgment for the United States substantially as prayed for.

PHILLIPS, Circuit Judge (dissenting). 11 U.S.C.A. § 21, in part reads:

"a. Acts of bankruptcy by a person shall consist of his having * * * (2) transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors; * * *."

Under the facts, it is clear that the assignment to Gotwals constituted an act of bankruptcy.

But 31 U.S.C.A. § 191, does not create any lien.[1] It is a priority statute. It presupposes a distribution of the debtor's property and does not apply while the property is in the hands of the debtor.[2]

The assignment was made on October 27, 1942. It was not a fraudulent transfer. It was made for a valuable consideration. True, it was an effort to prefer one creditor over another and would have been voidable had bankruptcy ensued within four months after it was made.[3] But bankruptcy did not ensue within four months or thereafter and the assignment was not a voidable preference when the United States instituted these proceedings on April 27, 1945.

It is not unlawful for an insolvent debtor to prefer a creditor.[4]

24 Okl.St.Ann. § 11, provides:

"Any person in this State indebted to other persons shall have the right to prefer one or more of such creditors in good faith to secure a valid debt, which preference may be manifested by payment, by mortgages, either real or chattel, or by the transfer of personal property or real estate, and if received by the creditor in good faith, such conveyance or mortgage shall be valid in the hands of the mortgagee and constitute a preference to the extent thereof, subject to the laws relating to the filing and recording of mortgages."

In Van Iderstine v. National Discount Co., 227 U.S. 575, 582, 583, 33 S.Ct. 343, 344, 57 L.Ed. 652, the court said:

"Conveyances may be fraudulent because the debtor intends to put the property and its proceeds beyond the reach of his creditors; or because he intends to hinder and delay them as a class; or by preferring one who is favored above the others. There is no necessary connection between the intent to defraud and that to prefer, but inasmuch as one of the common incidents of a fraudulent conveyance is the purpose on the part of the grantor to apply the proceeds in such manner as to prefer his family or business connections, the existence of such intent to prefer is an important matter to be considered in determining whether there was also one to defraud. But two purposes are not of the same quality, either in conscience or in law, and one may exist without the other. The statute recognizes the difference between the intent to defraud and the intent to prefer, and also the difference between a fraudulent and a preferential conveyance. One is inherently and always vicious; the other innocent and valid, except when made in violation of the express provisions of a statute. One is malum per se and the other malum prohibitum,—and then only to the extent that it is forbidden. A fraudulent conveyance is void regardless of its date; a preference is valid unless made within the prohibited period.

[1] Brent v. Bank of Washington, 35 U. S. 596, 610, 611, 10 Pet. 596, 610, 611, 9 L.Ed. 547; Beaston v. Farmers' Bank, 37 U.S. 102, 132, 12 Pet. 102, 132, 9 L. Ed. 1017; United States v. Wilkinson, 28 Fed.Cas. pages 605, 606, No. 16.695; Ernst v. Guarantee Millwork, 200 Wash. 195, 93 P.2d 404, 408; In re C. J. Rowe & Bros., Inc., D.C.Pa., 18 F.2d 658, 660.

[2] Beaston v. Farmers' Bank, 37 U.S. 102, 103, 12 Pet. 102, 103, 9 L.Ed. 1017; United States v. Clark, 25 Fed.Cas. pages 447, 450, No. 14,807; United States v.

Wilkinson, 28 Fed.Cas. page 605, No. 16,695; In re C. J. Rowe & Bros., Inc., D.C.Pa., 18 F.2d 658, 660.
Cf. United States v. Texas, 314 U.S. 480, 62 S.Ct. 350, 86 L.Ed. 356.

[3] 11 U.S.C.A. § 96; Remington on Bankruptcy (5th Ed.), Vol. 4 A, §§ 1657, 1693.

[4] Riedell v. Lydick, 176 Okl. 204, 55 P. 2d 465, 466; Lynn v. Brenner, 145 Okl. 188, 291 P. 509, 511; Van Iderstine v. National Discount Co., 227 U.S. 575, 582, 33 S.Ct. 343, 57 L.Ed. 652.

It is therefore not in itself unlawful to prefer, nor fraululent for one, though insolvent, to borrow in order to use the money in making a preference. So that, even if the Discount Company knew that Fellerman borrowed the money in order to pay off an honest debt, the transfer would not have been subject to attack by the trustee, except for the fact that a petition in bankruptcy was filed within four months thereafter. But the institution of such proceedings did not relate back and convert a lawful transfer into a fraudulent conveyance. * * *"

In Conard v. Atlantic Insurance Co., 26 U.S. 386, 439, 440, 1 Pet. 386, 439, 440, 7 L.Ed. 189, the court said:

"What, then, is the nature of the priority, thus limited and established in favor of the United States? Is it a right, which supersedes and overrules the assignment of the debtor, as to any property which the United States may afterwards elect to take in execution, so as to prevent such property from passing, by virtue of such assignment, to the assignees? Or, is it a mere right of prior payment, out of the general funds of the debtor, in the hands of the assignees? We are of opinion, that it clearly falls within the latter description. * * *

"If the legislature had intended to defeat the passing of the property to the assignees, as against debts due to the United States, the natural language in which such an intention would be clothed, would be to declare, that so far, such assignment should be void. * * *

"If, then, the property of the debtor passes to the assignees; if debts due to the United States constitute no lien on such property; if the preference or privilege of the United States be no more than a priority of satisfaction or payment out of a common fund; it would seem to follow, as a necessary consequence, that even if the teas in controversy were the property of Edward Thomson, they passed by his general assignment, in November 1825 (which is not denied to have been a bona fide and valid transaction), to his assignees, and became their property, for distribution among his creditors, and were not liable to the levy under the execution of the United States."

Since the assignment was a valid transfer, it could not be set aside by the proceedings here instituted by the United States and the priority provisions of § 191, supra, could only apply had bankruptcy or some other proceeding for the liquidation of House's property for the benefit of his creditors ensued.

Accordingly, it is my view that the judgment below should be affirmed.