**UNITED STATES v. PRESS WIRELESS, Inc.**

**No. 189, Docket 21933.**

United States Court of Appeals Second Circuit.

Argued Feb. 8, 1951.

Decided Feb. 26, 1951.

Irving H. Saypol, U. S. Atty., New York City, Henry L. Glenn, New York City, for appellant.

Gerdes & Montgomery, New York City, W. Randolph Montgomery, New York City, for debtor.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

PER CURIAM.

The only question on this appeal is whether the United States is entitled to priority in the payment of a claim, filed in a proceeding to reorganize a corporate "debtor" under Chapter XI of the Bankruptcy Act. The answer confessedly depends upon the meaning of § 191 of Title 31, U.S.C.A., a section which had its origin in 1790 and after several later accretions took substantially its final form in 1797,[1] and which went into the Revised Statutes as § 3466, by which name it has thereafter been generally known. Two questions arise: (1) was the debtor "insolvent"; and (2) had it committed "an act of bankruptcy"? Both the referee and the judge held that it was not "insolvent" because its assets were not less than its debts, and for that reason they did not reach the second question. So far as we have found, the Supreme Court first had occasion to consider the question while the Act of 1799 was in force,[2] and when the language now in that part of § 3466 which follows the

1. 1 St.L. 515.

2. 1 St.L. 676.

words, "shall be first satisfied", was in a later part of the section and began: "And the cases of insolvency mentioned in this second shall be deemed to extend," instead of "the priority established shall extend".[3] There being no bankruptcy statute then in existence, and therefore no "act of bankruptcy" being possible, the Court was confined to the other occasions prescribed in the section. It held that "insolvency must be understood to mean a legal and known insolvency, manifested by some notorious act of the debtor, pursuant to law"; and, that, as there had been none in the case then at bar, the section did not apply. It did not, however, rule as to whether the separated clause was to be read as a definition of "insolvency." However, fourteen years later Story, J.,[4] said that the "latter clause is merely an explanation of 'insolvency,' used in the first clause, and embraces three classes of cases, all of which relate to living debtors. The case of deceased debtors stands wholly upon the alternative in the former part of the enactment. Insolvency, then, in the sense of that statute, relates to such a general divestment of property as would in fact be equivalent to insolvency in its technical sense. It supposes that all the debtor's property has passed from him. * * * So, too, a mere inability of the debtor to pay all his debts is not an insolvency within the statute; but it must be manifested in one of the three modes pointed out in the explanatory clause already referred to." This was certainly a ruling that the "latter clause" defined the scope of "insolvency"; and, since one of "the three modes pointed out"—an assignment—was conditioned upon the insufficiency of the debtor's assets to meet his debts, the others presumably were not so limited. In 1838 the Court followed this declaration by saying that[5] "no evidence can be received of the insolvency of the debtor until he has been divested of his property in one of the modes stated in the section."

From the foregoing it appears to us that "insolvency" did not originally mean more than a failure to pay in due course; a meaning which at the time was almost inevitable anyway, because it was not until 1898 that it had ever been used to indicate inadequacy of assets. However, this was not the view which the Court took in 1923 when the question came up again.[6] The suit was one of original jurisdiction, the United States having filed a bill in equity against the state which the state moved to dismiss for insufficiency. The bill alleged that the state by a statutory commissioner had taken possession of the assets of one of the state's own banks; but it did not allege that the assets were insufficient to pay the debts. The Court held that "Mere inability of the debtor to pay all his debts in ordinary course of business is not insolvency within the meaning of the act" 261 U.S. at page 260, 43 S.Ct. at page 297. The assets must be insufficient; and, even though they are, the resulting insolvency "must be manifested in one of the modes pointed out in the latter part of the statute which defines or explains the meaning of insolvency referred to in the earlier part." Apparently, the Court read the definition of insolvency, which was attached to assignments for the benefit of creditors, as being a definition of "insolvency" generally. Having decided that this definition did apply to all insolvency, it would seem that the case would have been at an end; for, by hypothesis, none of the "modes" was enough without insolvency. However, 261 U.S. on pages 262 and 263, 43 S.Ct. on page 298, 299 the Court, after disposing of the issue of insolvency, went on to decide whether there was "an act of bankruptcy"; which was irrelevant. This leaves us in some doubt whether it regarded insolvency as a *sine qua non,* or as an alternative to an act of bankruptcy. Since the second is nowhere explicitly avowed, and since it certainly involves a wider departure from the precedents, we think that the decision means that

3. Prince v. Bartlett, 1814, 8 Cranch 431, 3 L.Ed. 614.

4. Conard v. Atlantic Insurance Company, 1 Pet. 386, 439, 7 L.Ed. 189.

5. Beaston v. Farmers' Bank, 12 Pet. 102, 133, 9 L.Ed. 1017.

6. United States v. State of Oklahoma, 261 U.S. 253, 43 S.Ct. 295, 67 L.Ed. 638.

insolvency always demands an insufficiency of assets; and that is the reading which three Courts of Appeals have put upon the opinion.[7] The Supreme Court having in any event plainly declared its understanding of the term itself, we of course accept its decision as authoritative.

Order affirmed.

7. Strain v. United States Fidelity & Guaranty Co., 8 Cir., 292 F. 694, 698; Liberty Mutual Insurance Co. v. Johnson Shipyards Co., 2 Cir., 6 F.2d 752, 753; United States v. Gotwals, 10 Cir., 156 F.2d 692, 694, 169 A.L.R. 619.