**LAKESHORE APARTMENTS, INC.,
et al., Appellants,**

v.

**UNITED STATES of America,
Appellee.**

**Elazar BEHAR et ux., Appellants,**

v.

**UNITED STATES of America,
Appellee.**

**Nos. 19554, 19555.**

United States Court of Appeals
Ninth Circuit.

Sept. 29, 1965.

Lyle L. Iversen, Lycette, Diamond & Sylvester, Seattle, Wash., for appellants.

William N. Goodwin, U. S. Atty., Robert C. Williams and Thomas Brucker, Asst. U. S. Attys., Seattle, Wash., for appellees.

Before BARNES and KOELSCH, Circuit Judges, and MADDEN, Judge, Court of Claims.

KOELSCH, Circuit Judge.

These two actions (Case Numbers 19554 and 19555) were tried together in the district court and have been consolidated here on appeal.

The appeal in No. 19554 is from the judgment foreclosing a mortgage executed by the Lakeshore Apartments, Inc.; the issue is the coverage of that mortgage.

In No. 19555 the appeal is from a money judgment entered against Elazar Behar and John E. Brown, Lakeshore's shareholder-managers; the issue in it is their personal liability for disbursing Lakeshore's money.

The district court had jurisdiction under 28 U.S.C. § 1345 and 12 U.S.C. § 1743. Jurisdiction over the appeals is granted this court by 28 U.S.C. §§ 1291 and 1294(1).

There was little conflict in the evidence. In the foreclosure action (No. 19554) it appears that in 1947 Lakeshore borrowed $3,000,000 from the National Life Insurance Co., giving as security a mortgage on the large apartment complex that Lakeshore proposed to build and operate. The loan was insured under the provisions of the Federal Housing Act. For several years following completion of the project Lakeshore made all its payments promptly as they fell due, but in 1960 business declined and Lakeshore defaulted. Thereupon, National, asserting its rights under the insuring agreement, assigned Lakeshore's note and mortgage to the Commissioner of the Federal Housing Administration. He granted Lakeshore an informal moratorium on a month-to-month basis whereby Lakeshore paid interest and other service charges on the loan and discontinued payment on the principal.

Early in 1962 Elazar Behar and John E. Brown (and their wives) acquired all Lakeshore's stock and took over the management of the corporation. Soon afterward they bought furniture for 100 of the apartment units, which Lakeshore then leased to Boeing for a term of seven months. The down payment was made by Brown and Behar on the understanding with the Commissioner that the furniture was to belong to Lakeshore upon the expiration of the lease.

In August an agreement was entered into modifying certain terms of the note and mortgage and curing the default. Lakeshore resumed making regular monthly payments on this new agreement and continued to do so through November; but in December it again defaulted. The Commissioner then commenced this action to foreclose the mortgage. He alleged, and the court held, that the mortgage security consisted not only of the apartment building and grounds but also the furniture purchased by Behar and Brown. Sale was ordered.

■■ Appellants urge (a) that the parties did not intend the mortgage to cover personal property and (b) that even if Lakeshore had so agreed, this particular personal property did not belong to Lakeshore but at most was the subject of a promise by Behar and Brown to convey it to Lakeshore and that promise was unenforceable because of a lack of consideration.

Neither argument is sound. The indenture of mortgage in terms included all furniture and furnishings thereafter used in the apartments. And the evidence was uncontradicted that Brown and Behar caused the furniture to be listed on Lakehore's books as a corporate asset, thus showing that their promise was fully performed; the asserted lack of consideration was therefore immaterial.

This additional statement is essential to an understanding of the action against Behar and Brown. (Case No. 19555).

For several months prior to June 13, 1963, the date the mortgage foreclosure action was commenced, Lakeshore owed the A.B.C. Management Co. (hereinafter "A.B.C.") $19,758.60, T. A. Alberg $3,900.00, Elazar Behar $2,800.00 and R. S. Cohen $3,900.00, or a total of $30,-358.60 for services.[1] On June 6, Behar and Brown had made and executed Lakeshore's check to A.B.C. and on June 30 they issued checks to Alberg, Behar and Cohen in the amounts of these debts. None of these checks was cashed immediately because, at the time, the payees as well as Behar knew that Lakeshore's bank account lacked sufficient funds to cover payment. However, during the ensuing two months Lakeshore deposited rentals and other income received from the business and on August 23 the check to A.B.C. was presented to the bank and paid and on September 13 the other checks were cashed.

■ With the foreclosure complaint the United States filed a motion seeking the appointment of a receiver for the apartments, but the motion was not immediately urged; instead, the court continued the matter upon the parties' stipulation that Lakeshore would "not disburse any assets, property or moneys except in the ordinary course of business and then only for salaries, wages and other necessary operating expenses. * * *" No receiver was appointed

until September 13. On discovering that the debts owing A.B.C. Management, etc. had been paid, the receiver instituted a contempt proceeding against Behar and Brown in the foreclosure action and, in addition, the United States simultaneously commenced this separate civil action. The contempt matter was heard first. Behar and Brown were adjudged guilty; they were ordered to and did purge themselves by paying $30,358.60 to the receiver to hold pending the outcome of the civil action. Following trial of the latter action, the district court rendered judgment for $30,358.60 against Behar and Brown. Decision was rested on each of the several theories. We need not discuss all of them, for in our estimation Behar and Brown were clearly liable under the provisions of 31 U.S.C. § 191, the statute creating a priority in favor of debts due the United States, and 31 U.S.C. § 192, the statute which imposes liability for failing to heed the priority.[2] Both sections "are part of a single statutory structure" [King v. United States, 379 U.S. 329, 334, 85 S.Ct. 427, 13 L.Ed. 2d 315 (1964)] to be "liberally construed" [Beaston v. Farmers Bank, 12 Pet. 102, 37 U.S. 102, 134, 9 L.Ed. 1017 (1838)] "in order to secure an adequate revenue to sustain the public burdens and discharge the public debts." United States v. State Bank of North Carolina, 6 Pet. 29, 31 U.S. 29, 35, 8 L.Ed. 308. (1832).

1. The A.B.C. Management Co. was a partnership. All of its members, as well as Alberg and Cohen, were former Lakeshore shareholders. Presumably they wanted the business to continue and were not unwilling to wait for payment of their claims until Lakeshore was in better financial condition to do so.

2. 31 U.S.C.A. § 191.
"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts,

makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed. R.S. § 3466."
31 U.S.C.A. § 192.
"Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid. R.S. § 3467; May 10, 1934, 11:40 a.m., c. 277, § 518(a), 48 Stat. 760."

Section 191 applies in terms to cases in which an insolvent debtor of the United States commits an act of bankruptcy. United States v. Emory, 314 U.S. 423, 62 S.Ct. 317, 86 L.Ed. 315 (1941). This is clearly such a case.

Lakeshore was insolvent within the meaning of that Section [United States v. State of Oklahoma, 261 U.S. 253, 261, 43 S.Ct. 295, 67 L.Ed. 638 (1923)] for the evidence clearly shows and the district court made the finding, unchallenged on appeal, that from April through September, 1963, its liabilities exceeded its assets.

Additionally, Lakeshore's debt became one due the United States upon the assignment of the note and mortgage to the Commissioner of the F.H.A. Korman v. F.H.A., 72 App.D.C. 245, 113 F.2d 743, 745 (D.C.Cir. 1940).

And lastly, Lakeshore committed the requisite "act of bankruptcy" required to trigger the operation of the statute. United States v. State of Oklahoma, 261 U.S. 253, 43 S.Ct. 295, 67 L. Ed. 638 (1923). Section 3, sub. a of the Bankruptcy Act [11 U.S.C.A. § 21, sub. a] enumerates six "acts of bankruptcy," one of which is the making or suffering of a "preferential transfer," defined elsewhere in the Act [Section 60, sub. a, 11 U.S.C.A. § 96, sub. a] to be "a transfer * * * of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months * * * of the petition [in bankruptcy] the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class * * *."

Here, as noted earlier, the debts to A.B.C. had accrued long before they were paid, and their payment at a time when Lakeshore was insolvent necessarily favored those payees at the expense of other creditors. True, no petition in bankruptcy was ever filed by or against Lakeshore and hence none of the payments was made within four months thereof; but that fact could hardly deprive the payments of their real character. We are fully aware that the time limitation specified in Section 60, sub. a of the Bankruptcy Act [11 U.S.C.A. § 96, sub. a] is an essential element of a transfer which is asserted as a ground for an adjudication of bankruptcy [Sec. 3, 11 U.S.C.A. § 21, sub. b] or to set aside as voidable a preference [Sec. 60, sub. b, 11 U.S.C.A. § 96, sub. b]; but of course this is not such a proceeding; to import the limitation into the priority statute is totally unnecessary to its functioning, would serve to defeat its purpose, and would be inconsistent with the Supreme Court's mandate of liberal construction. See United States v. Gotwals, 156 F.2d 692, 169 A.L.R. 619 (10th Cir. 1946); United States v. Lutz, 295 F.2d 736 (5th Cir. 1961); United States v. Pine Hill Apartments, 261 F.2d 667 (5th Cir. 1958).

The purpose of Section 192, the priority statute's companion, " * * is to make those into whose hands control and possession of the debtor's assets are placed, responsible for seeing that the Government's priority is paid." King v. United States, 379 U.S. 329, 85 S.Ct. 427, 13 L.Ed.2d 315 (1964). The fact that the debts were "legitimately due" or that they were paid under threat of crippling suits is no defense. Behar and Brown were in complete control of Lakeshore's assets, they were fully aware of Lakeshore's debt to the United States,[3] and they paid other creditors without due regard to the government's statutory priority. They are thus liable.

The judgments are affirmed.

---

3. A long and developing line of cases has judicially engrafted upon Section 192 the requirement the person must have notice of the debt owed the government in order to be liable. King v. United States, 379 U.S. 329, 85 S.Ct. 427, 13 L.Ed.2d 315, (1964); 41 A.L.R.2d 446 at 450.