Donald D. MANVILLE, Appellant,

v.

BORG–WARNER CORPORATION, Appellee.

No. 78–69.

United States Court of Appeals Tenth Circuit.

Nov. 14, 1969.

George Thomas Van Bebber, Troy, Kan. (James F. Duncan and Landon H. Rowland, Kansas City, Mo., on the brief), for appellant.

Kent E. Whittaker, Kansas City, Mo. (William V. North, Kansas City, Mo., on the brief), for appellee.

Before MURRAH, Chief Judge, and LEWIS and HILL, Circuit Judges.

HILL, Circuit Judge.

In this diversity suit appellant Manville sued appellee Borg-Warner for invasion of privacy. At the close of all evidence, appellee moved for a directed verdict. The motion was denied. Subsequently, the jury returned a verdict for Manville in the sum of $2500 actual damages and $7500 punitive damages. Upon entry of judgment, appellee renewed his motion in conjunction with a motion to set aside the jury verdict. Alternatively, appellee asked for a new trial. The trial judge granted appellee's motion for judgment notwithstanding the verdict and ordered that judgment be entered for plaintiff-appellant for nominal damages only. The trial judge also granted appellee's motion for a new trial in the event that the judgment n. o. v. should be vacated or reversed.

On his appeal, Manville contends that the trial judge erroneously applied the law of Kansas when he held that Manville could not recover substantial actual damages without proof thereof. Consequently, appellant maintains that it was error for the trial judge to grant judgment notwithstanding the verdict. The question on appeal is whether under the law of Kansas a plaintiff in an invasion of privacy suit can recover substantial damages without any proof of damages. In diversity suits, applying State law, the District Court's view on questions

of State law will not be disturbed unless clearly erroneous.[1]

Manville's suit was based upon several advertisements which appellee placed in the Wall Street Journal, The American Legion Magazine, the V.F.W. Magazine, and the Agricultural Equipment Dealer. The advertisements appeared at various time from 1964 through 1966. They depicted Manville standing in front of a Norge Village Laundry, and they contained some background material on him.

The events precipitating the ads began in 1964 when Manville was contacted by Huston Jones and Al Austin, both of whom were then working for Norge Division of appellee Borg-Warner Corporation. Manville was already acquainted with them through previous transactions involving Manville's self-service laundry business. Jones and Austin approached Manville as a potential purchaser of two Norge Village self-service laundries in Kansas City. Some agreement was arranged between Manville and the two Norge representatives whereby the three would purchase and promote the two Kansas City laundries.

Manville testified that in August, 1964, soon after the purchase of the two Norge laundries, Jones told him that Jones had a chance to run a feature article about Manville in the Wall Street Journal. Jones asked Manville to furnish background information and a photograph for the article. But Manville replied that he was not interested in being the subject of anything that looked like advertising. On other occasions Jones repeated his request. Eventually he prevailed because in September, 1964, Manville posed for a picture in front of one of the Norge Villages and submitted personal data in a letter to Jones.

Manville heard no more about the matter until November, 1964, when his banker showed him the current issue of the Wall Street Journal which contained Manville's picture in appellee's advertisement. The advertisement included words to the effect that Manville, as an owner of a Norge Village, endorsed Norge-equipped coin operated laundries as sound investment opportunities. Manville testified that upon seeing this ad, he tried to contact Jones. When he finally did see Jones, he told Jones that he thought there was to be a feature story instead of an ad, and he told Jones that he did not like it and did not want it run anymore.

Appellant Manville did not see the ad again until late July, 1965, when an insurance agent brought Manville's attention to The American Legion Magazine which contained the same ad. Manville renewed his earlier complaint. But this time he complained to appellee's *credit manager at a meeting to discuss a dispute concerning Manville's account with appellee.* Six months later appellee brought suit on the account dispute, and subsequent to that Manville brought the suit now on appeal.

It is clear that Kansas recognizes an action for invasion of privacy. But the cases do not make it entirely clear what proof of damage is required in such suits. In the instant case, there was no proof of the amount of Manville's damage. More important, there was no direct evidence that Manville was damaged at all since Manville himself did not even testify that he suffered embarrassment or any other form of mental anguish. Some inferences can be made from Manville's testimony that he told Jones and the credit man that he did not like the ad and did not want it run anymore. But, except for that, the record is barren of any proof on the issue of damages. Because Manville

---

1. Wegner v. Rodeo Cowboys Association, 417 F.2d 881 (10th Cir. 1969), opinion filed October 31, 1969; Douglas-Guardian Warehouse Corporation v. Jones, 405 F.2d 427 (10th Cir. 1969);

Continental Casualty Co. v. Firemen's Fund Ins. Co., 403 F.2d 291 (10th Cir. 1968); Mutual of Omaha Insurance Company v. Russell, 402 F.2d 339 (10th Cir. 1968).

failed to show any substantial injury, his position on appeal must be that in such suits injury is presumed not only for purposes of pleading, but also is inferred by law for purposes of damages. Manville is entitled to a reversal and a reinstatement of the $10,000 jury verdict only if Kansas law allows substantial damages in privacy suits without proof of their amount or their existence.

Kunz v. Allen, 102 Kan. 883, 172 P. 532 (1918) was the first Kansas case to recognize the privacy action. It involved a demurrer sustained by the trial court on the ground that plaintiff failed to prove any actual damages from the invasion. The Supreme Court of Kansas reversed saying this was not necessary. Without more, this statement might indicate that a plaintiff suing for invasion of privacy need not prove any general or special damages, to recover substantial damages.[2] However, the cited cases and the explanatory language following the statement tend to restrict the holding. The statement was set in the context of stating it is not necessary to prove the amount of damages in dollars and cents; so the holding is not broad enough to say that it is not necessary to show any general damages even as to their existence.

That this is an accurate reading of Kunz is plain from an analysis of the cited case of Schaap v. Hayes, 99 Kan. 36, 160 P. 977 (1916). In that assault and battery case, the court held that it was not necessary to place a money estimate upon physical or mental suffering as long as the evidence tended to show the effect of the wrong upon plaintiff. The other cited cases are similar.

Kunz v. Allen, supra, established that a plaintiff in an invasion of privacy suit can recover substantial damages without proof of special damage. And general damages are recoverable without a showing of specific loss. But even though a plaintiff may not have to show the amount of his damages, it is doubtful whether he is outside the usual rule and can recover substantial damages without *any* evidence of general damages. Appellant cites Dean Prosser for the contrary view, but Prosser's commentary[3] is not an appraisal of the law of Kansas. The court in Kunz did not allow recovery in the absence of any proof, for it is clear that plaintiff there did offer proof of general damages although there was no proof of the amount.

The only other Kansas case on invasion of privacy reinforces the point, albeit inferentially. In Johnson v. Boeing Airplane Co., 175 Kan. 275, 262 P.2d 808 (1953), the court reiterated that recovery may be had without proof of special damage, and went on to note that plaintiff's evidence disclosed that he was not "hurt, embarrassed, humiliated, aggravated, or in any way 'put out,' due to the publication of the advertisement." The case was eventually decided on the issue of consent with the court holding that plaintiff waived his right of privacy. But the quoted language, together with Kunz, compels the conclusion that Kansas law requires a plaintiff in privacy cases to show some general damages even though he is not required to prove either their amount or that there were special damages.

Appellant raises the point that invasion of privacy is analogous to libel per se, and concludes that the proof of damage for each is the same. He buttresses his position by noting that Kunz was cited approvingly in Bothe v. True, 103 Kan. 562, 175 P. 395, 396 (1918), a defamation case decided the same year. In Bothe, the court said, "Complaint is made that the [trial] court refused to submit two special questions in which the defendant requested that the jury be required to state what the

---

2. Actual damage includes both general and special damage. 25 C.J.S. Damages § 2.

3. Prosser, Privacy, 48 Cal.L.Rev. 383 (1960).

items of actual damage were in each cause of action. Only general damages were alleged, and there was no evidence to prove any item of damage. The questions requested could not be answered from the evidence. It was for the jury to determine the amount of damages sustained by the plaintiff." Citing Kunz v. Allen, supra. The court found no prejudicial error in refusing to submit the questions.

One could conclude from the language in Bothe that Kunz stands for the proposition that no general damages need be proved in invasion of privacy just as they need not be proved in slander per se. A better conclusion is that Kunz was used as authority only for the last sentence stating that it is for the jury to determine the amount of the damages.

The only other support in Kansas law for an analogy between defamation and invasion of privacy is the statement in Kunz that plaintiff can recover for invasion of privacy without pleading or proving special damages. In this respect invasion of privacy resembles an action for libel or slander per se. The similarity follows because of the difficulty in measuring damages in each action. But this similarity alone is too frail to support an analogy leading to the conclusion that the proof of damage rules in each action are in every way the same. It is too much to say that general damages in privacy suits arise by inferences of law and need not be proved because that is the rule for libel per se. Not only is there little Kansas authority supporting the analogy, but Kunz and Johnson indicate that there must be some showing of general damage in order to recover substantial damages.

 Upon considering the two Kansas cases on privacy and the cases cited therein, only two things emerge: One, a plaintiff in a privacy suit can recover without proof of special damage. And, two, plaintiff need not show general damages in specific amounts. The cases are not authority for the proposition that in privacy suits general damages will be inferred by law without proof. The ordinary damage rules apply in this respect, and without showing some general damages, Manville is entitled to recover only nominal damages.

Affirmed.