FISCHER CONSTRUCTION COMPANY, Appellants,

v.

FIREMAN'S FUND INSURANCE COMPANY, Appellees.

FIREMAN'S FUND INSURANCE COMPANY, Appellants,

v.

FISCHER CONSTRUCTION COMPANY, Appellees.

Nos. 10138, 10139.

United States Court of Appeals
Tenth Circuit.

Dec. 19, 1969.

Ted Pool, Del City, Okl. (John L. Garrett, Garrett, Pool & Smith, Del City, Okl., with him on the brief), for appellant Fischer Construction Co.

Byrne A. Bowman, Felix, Bowman, McIntyre & McDivitt, Oklahoma City, Okl., for appellees Fireman's Fund Insurance Co.

Before MURRAH, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

MURRAH, Chief Judge.

This appeal is from a judgment against Fischer Construction Co., a partnership, as principal on payment and performance bonds, indemnifying Fireman's Fund for losses incurred after take-over and completion of the Fischers' bonded contracts with the Oklahoma Highway Department. A statement of the basic facts will put the case in perspective and elucidate the trial court's judgment and our modification of that part of the judgment based on the jury verdict.

The Fischers successfully bid on approximately $1,600,000 of highway contracts with the state of Oklahoma and Fireman's agreed to provide the statutorily-required performance and payment bonds for these jobs, subject to conditions expressed in a letter agreement. In this letter the Fischers agreed to set up a separate "special" bank account of $200,000, to deposit in that account all funds received in payment on these contracts, and to use that account exclusively for payment of contract expenses. The letter also required a Subordination Agreement by T. R. Benedum, to which a duplicate deposit slip in the amount of $200,000 was to be attached. The Fischers obtained a short-term loan of $200,000 and deposited it in a special account, submitting the deposit slip to Fireman's. The bonds were then issued. Five days after deposit the Fischers repaid the loan from the same account.

Eleven months after the contracts were let Fireman's began to receive complaints from the Fischers' creditors and sent a representative to look at their books. He discovered approximately $320,000 in outstanding bills on the contracts. The absence of the $200,000 from the special account was discovered at about the same time and the report of the later-appointed receiver shows that substantially all of the Fischers' construction equipment was encumbered at this time. On the basis of the information discovered Fireman's ordered the state of Oklahoma to stop paying the Fischers on the contracts. Fireman's representatives conferred with the Fischers a week later and gathered more data from their books. Two days after that conference Raymond Fischer signed a statement of default on the contracts for Fireman's attorney. A week later Fireman's retained an out-of-state contractor to estimate the cost of completing the work and informed the Fischers that they would not be allowed to complete the contracts. On the same day, in their own attorney's office, Fischers signed letters admitting default, copies of which were sent to the Highway Department and the prime contractor. Fireman's then negotiated two contracts for the completion of the work and paid all unpaid bills, suffering a loss of $555,928.97.[1]

A few months later Fireman's filed their complaint seeking appointment of a receiver for the Fischers and indemnification under its indemnity agreement

---

1. The net loss of Fireman's was calculated in the following manner:

| | | |
|---|---|---|
| Contracts for Completion of the Work: | | $311,967.45 |
| Unpaid Bills and Other Completion Costs: | | 626,434.98 |
| Recoveries (Deduct) | $382,473.46 | |
| Net Loss and Expense: | | $555,928.97 |

with the Fischers.[2] A receiver was appointed without objection. In its motion for summary judgment on its claim, Fireman's specifically alleged facts which it said constituted fraudulent inducement to become surety and sought judgment for the loss incurred in the completion of the work, either as a loss resulting from these fraudulent acts or as a loss reimbursible under its indemnity agreement with Fischers.[3]

At the hearing on the motion Fischers' counsel conceded that Fireman's was entitled to the judgment on the basis of the indemnity agreement because of Fischers' default on their contracts, but refused to concede that Fischers had fraudulently secured the bonds.[4] The court declined summary judgment on either theory to afford the Fischers an opportunity to answer Fireman's fraud allegations.

The Fischers then answered and counterclaimed. Contrary to the admissions at the summary judgment hearing, the answer denied default. It also denied fraud and asserted that Fireman's had spent excessive amounts in completing the work. The counterclaim alleged two separate torts by Fireman's and sought actual and punitive damages for both. The first tort asserted was that the Fischers' insolvency resulted from Fireman's negligent investigation and wrongful interference with the contract pay-

ments. The second tort alleged was that subsequent to its stopping of the contract payments Fireman's agreed to release the payments and to finance the Fischers if they would admit insolvency, that the Fischers issued payroll checks in reliance on that agreement, and that Fireman's then breached the agreement. This breach allegedly injured the Fischers by bringing on their insolvency and angering employees who, upon receiving the "bouncing" paychecks, destroyed some of the Fischers' construction equipment.

The trial court first dismissed the counterclaim and then, by a *nunc pro tunc* order treated the dismissal as a summary judgment for Fireman's. In its *nunc pro tunc* judgment the court found that Fischers were insolvent and unable to pay their bills when the contract payments were stopped and that Fireman's had a right to stop the payments, take possession of the premises and complete the work. The dismissal and summary judgment were held to be non-appealable orders in two prior attempted appeals by the Fischers. The summary judgment is now appropriately here for review.

Although the subsequent pretrial order included among defendant's contentions both torts of the counterclaim, the summary judgment was undoubtedly intended to remove the issue of wrongful stoppage of payments from the trial,

2. The indemnity agreement between the parties provided as follows:
    Second: Subject to the limitations hereinafter named, the undersigned, Raymond L. Fischer and John J. Fischer dba Fischer Construction Company, Raymond L. Fischer, an Individual, John H. Fischer, an Individual by these presents do hereby jointly, severally and unconditionally agree to indemnify and reimburse the Sureties and each of them from and against any and all liability arising, resulting, sustained or incurred, or which can or may arise, result from or be sustained or incurred by said Sureties, or any of them, by reason of having executed said bonds * * *

3. It is admitted that the fraud theory was pleaded because a judgment for fraud

would not be dischargeable in bankruptcy. 11 U.S.C.A. § 35 (Supp.1969).

4. At that hearing the following occurred:
    THE COURT: * * * What is the relation or right of the Plaintiff here for judgment?
    MR. HASS [attorney for Fischers]: They are entitled to the judgment, your Honor, but not on the basis of fraud.
    THE COURT: That is what you are objecting to, the allegation of fraud?
    MR. HASS: Yes, sir. He can have this judgment but—
    THE COURT: (Interposing) Now that is because of what?
    MR. HASS: Because they did default on their contract and the bonding company does have the itemized list of their expenses here on when they took over the jobs.

leaving only the second part of the counterclaim, i. e., breach of an agreement to release funds. On trial the court accordingly refused to admit the Fischers' proof of non-default because of their admissions, but did allow evidence on the alleged agreement to release payments and finance the Fischers. At the close of the Fischers' evidence, however, the court directed a verdict on the counterclaim, thus taking from the jury the second tort alleged in the counterclaim.

Consistently with the summary judgment on the stoppage of payments issue and the directed verdict on the agreement to release payments issue, the court instructed the jury, without objection, that the Fischers were insolvent as a matter of law at the time in question and had admitted Fireman's right to finish the work. The effect of these instructions was to establish as a matter of law the Fischers' liability to Fireman's under its indemnity agreement, leaving to the jury only the questions of the Fischers' alleged fraud as an alternative basis of recovery and the reasonableness of completion costs in the calculation of Fireman's loss under either theory.

The jury was told that Fireman's claimed it had been induced to become surety on the bonds by the Fischers' fraudulent representations and that the Fischers denied they had committed fraud. The jury was conventionally instructed on fraud as a basis of recovery. The court even went so far as to comment on the evidence as it related to the fraud issue, but finally cautioned the jury to disregard the comment. The jury returned a verdict of $200,000 for Fireman's, apparently on the indemnity agreement, and specifically exonerated the Fischers on the fraud issue.

The Fischers' appeal challenges the summary judgment and directed verdict on the counterclaim and the denial of a motion for new trial. Fireman's cross-appeal asserts as error the trial court's denial of judgment n. o. v. on the fraud theory and the denial of judgment n. o. v. for the full amount of its loss under either theory. We must thus determine whether the summary judgment and the directed verdict correctly disposed of the counterclaim, whether Fireman's completion costs were reasonable, and whether Fireman's was entitled, as a matter of law, to a finding that Fischers had committed fraud. We note, initially, that if we were to adopt the admission of default and liability under the indemnity agreement made by the Fischers' attorney at the summary judgment hearing there would be no question concerning the propriety of the summary judgment and directed verdict. We will, however, consider the propriety of these rulings in light of all the relevant facts.

■ While different rules have been promulgated to explicate directed verdicts and summary judgments, in the final analysis they both turn on whether any genuine issue of fact survives the pleadings and depositions or evidence, requiring fact-findings. Thus, we have often said summary judgment is justified only if no material issue of fact survives the pleadings, affidavits and depositional proof. Well Surveys, Inc. v. Perfo-Log, Inc., 396 F.2d 15 (10th Cir. 1968); H. B. Zachry Co. v. O'Brien, 378 F.2d 423 (10th Cir. 1967); McCullough Tool Co. v. Well Surveys, Inc., 395 F.2d 230 (10th Cir. 1968); Jensen v. Voyles, 393 F.2d 131 (10th Cir. 1968); Bumgarner v. Joe Brown Co., 376 F.2d 749 (10th Cir. 1967); Wagoner v. Mountain Savings & Loan Association, 311 F.2d 403 (10th Cir. 1962). The prevailing rule on directed verdicts, at least in this Circuit, seems to be that a directed verdict is justified only if the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion. Weeks v. Latter-Day Saints Hospital, 418 F.2d 1035 (10th Cir. 1969); Derr v. Safeway Stores, Inc., 404 F.2d 634 (10th Cir. 1968); Gulf Insurance Co. v. Kolob Corp., 404 F.2d 115 (10th Cir. 1968); C. H. Codding & Sons v. Armour and Co., 404 F.2d 1 (10th Cir. 1968). In practical effect the underlying rule is the same and in both instances the trial

court is empowered and enjoined to look through transparency to substance.

■ We think the court rightly decided there was no genuine issue of fact concerning Fireman's stoppage of payments. The Fischers' allegation of solvency was conclusively refuted by the established fact of unpaid bills of over $300,000 on the Fireman's contracts and over $190,000 on other bonded contracts and the further fact that all of Fischers' construction equipment was encumbered. The alleged negligent investigation of Fischers' insolvency was conclusively countered by the facts of the Fischers' conference with Fireman's, leading to the discovery of Fischers' due and unpaid bills. The allegation that Fischers' default statement to Fireman's attorney was untrue and given only to secure Fireman's release of the contract payments was conclusively countered by the fact that the Fischers, with advice of counsel, also admitted default in a letter [5] written after learning that Fireman's would not release the money.

■ The Fischers argue that the trial court applied the wrong test of insolvency in finding, on the basis of these facts, that they were insolvent and that Fireman's rightly stopped the contract payments. They deny that the standard of solvency apparently applied by the trial court, i. e., inability to discharge debts in the ordinary course of business, is applicable here. Instead, they rely upon cases involving statutory definitions of insolvency, notably in the context of bankruptcy and assignments for the benefits of creditors, which, tersely stated, define insolvency as an excess of liabilities over assets, i. e., see Lakeshore Apartments, Inc. v. United States, 351 F.2d 349, 353 (10th Cir. 1965); United States v. Press Wireless, Inc., 187 F.2d 294 (2d Cir. 1951); United States v. Gotwals, 156 F.2d 692, 169 A. L.R. 619 (10th Cir. 1946). We fail to see the relevance of the Fischers' insolvency arguments to Fireman's right to take over the contracts. The question must be and is whether at the time of the take-over the Fischers were insolvent in the sense of being financially unable to perform their contracts and were therefore in default on them.

Considering the unpaid bills and the Fischers' admissions of default, made with the advice of counsel, it is clear the Fischers were financially unable to perform their work and therefore in default. The court properly concluded that Fireman's had the right and duty

5. Letter of Fischers to Oklahoma Highway Dept.:

"In Re: I–40–5(41) 164 7.697 miles Bermuda sodding, Oklahoma County. I–40–6(324) Bridge, Sequoyah County, FAP–F–222(16) Seminole County.

"Dear Mr. Lyons: We address you as the prime contractors with the State of Oklahoma to advise that due to inadequate capital we are unable to complete the work covered thereby. We regret that this situation exists, but believe that in view of all the facts, it will be to the best interests of all parties concerned if said contracts be cancelled and annulled immediately. In order to expedite the cancellation thereof, we waive notice of annullment as set forth in Standard Specifications for Highway Construction of the State of Oklahoma, and particularly as set forth in Paragraph 108.10 thereof.

"You are assured of our desire to cooperate in every possible manner with the State of Oklahoma and our surety in completing the work covered by the above contracts at the earliest possible date and with the least expense to all parties concerned. To this end, we will make our crews available for the completion of said work and will to the extent of our ability make our machinery and equipment therefor without cost.

"By copy of this letter to our surety, we are giving notice of the above action and look forward to hearing from both you and our surety at once so that we may take all necessary steps to be in full cooperation with both of you in the completion of the work covered by the above contracts.

FCC:eac
cc: Fireman's Fund Insurance Co.
400 Mercantile Dallas Building
Dallas, Texas

Very truly yours,
Fischer Construction Company
By Raymond L. Fischer
John J. Fischer"

to take over performance of the bonded contracts. As the court observed, "[w]hen you have $300,000 * * * of bills you can't pay, you are in default. There isn't any escaping that."

As we have seen, the second tort alleged in the Fischers' counterclaim was that Fireman's breach of an agreement to release the contract payments, after the Fischers had released payroll checks to employees in reliance on the agreement, caused the Fischers' insolvency and prompted the destruction of their construction equipment by angered employees. This tort was not removed from the litigation by the summary judgment since Raymond Fischer's deposition in support of the allegations had not been conclusively refuted by Fireman's at the time of the summary judgment.

On trial, Raymond Fischer testified that after stoppage of payments Fireman's representatives confirmed their agreement to release the contract payments and to allow the Fischers to finish the work. He testified that they told him that he could continue to write his own checks but that one of their representatives would have to approve payments made by Fischers. They are said to have told him that they were going to set up the mechanics to release the money and to meet the payrolls pursuant to the agreement. Fischer further testified that he believed his statement of default to Fireman's attorney was necessary to secure the release and that he continued to believe the money would be released until Fireman's informed him to the contrary.

■■ We think the directed verdict on this issue was proper. Assuming the existence and breach of an agreement, there is nothing here to support the allegation that the breach precipitated or contributed to Fischers' insolvency. As we have seen, the summary judgment on the first part of the counterclaim properly concluded that the Fischers were already insolvent at the point at which Fireman's stopped the contract payments. Nor is there any support for the allegations that the Fischers, in reliance on the agreement, issued payroll checks which were not covered by sufficient funds because of Fireman's breach. And, finally, there was no evidence that the Fischers' employees did any damage to the construction equipment. Having failed to prove actual damages, the Fischers were not entitled to punitive damages under the laws of Oklahoma. Eckels v. Traverse, 362 P.2d 680 (Okl. 1961); Mathies v. Kittrell, 354 P.2d 413 (Okl. 1960); 23 O.S.A. § 9 (1955).

■ This brings us, finally, to the judgment of the court on the jury verdict. Under the instructions of the court the only issues submitted to the jury were the fraud theory of recovery and the reasonableness of completion costs in calculating Fireman's loss.[6] The jury was told without objection,[7] that the Fischers were insolvent at the time of Fireman's investigation and continued to be insolvent to the time of the lawsuit and the appointment of the receiver. They were also told that the

6. We think Fischers' contention that the court should have allowed the jury to set off against Fireman's recovery the damages which Fireman's caused Fischers is merely a restatement of their counterclaim and is meritless since the counterclaim was properly taken from the jury.

7. At the conclusion of the court's instructions, Fischers' counsel objected to "the statement stated to the jury by the Court because it does not as a matter of fact reflect the proof of the defendant, and that it is prejudicial to the case of the defendant." We do not read this objection as referring specifically to the court's instruction on Fischers' insolvency and admission of Fireman's right to take over and complete the contracts. Indeed, the generality of the objection leaves us in doubt concerning its intended meaning. In view of the court's instructions and comments on fraud, it seems likely that the objection was directed to that issue alone.

Similarly, the Fischers complain on appeal of the court's failure to give requested instructions, but these instructions are not brought forward on appeal and therefore cannot be considered here.

Fischers admitted their default, admitted Fireman's right and duty to take over and complete the contracts, and admitted that Fireman's had incurred a net loss of $555,928.97 in completing the work and paying the bills. The jury was further instructed, however, that the Fischers asserted that Fireman's had "paid excessive prices for the completion of the contracts" and if the jury found any of Fireman's expenditures were not reasonable, necessary or proper, they should reduce Fireman's recovery accordingly. But the jury was also told that the burden was on the Fischers to prove this claim of excessive expenditures. Since we affirm the summary judgment and the judgment on the directed verdict, these instructions are the dimensions of our lawsuit. And if the jury understood and followed the court's instructions, they apparently thought the completion expenditures were excessive, since the verdict was for only $200,000.

█ If we interpret the verdict as a finding that the net loss should have been $200,000 rather than the $555,928.-97 actually incurred, the question is whether the verdict is supported by the evidence. Otherwise stated, the question is whether the Fischers' proof impugned the integrity of the admitted net loss, and, if so, to what extent.

The only countervailing evidence on the completion costs was the testimony of John and Raymond Fischer. John Fischer who admitted that he was concerned with the "field" aspects of the work and did not keep track of costs, testified that he estimated the labor costs in completing two of the contracts at from $15,000 to $18,000 and the cost of completing a third at from $2500 to $3000 a week for 25 or 30 working days. This witness was admittedly unfamiliar with the projection of costs of construction and his calculations failed to take account of the costs other than labor incurred by the completing contractors

and of the variables entering into the calculation of the labor cost itself. The contrast between the generality of his labor cost estimates and the completeness and specificity of Fireman's actual completion costs emphasizes his statement's lack of probative value. Indeed, we are unable to determine with any degree of accuracy what the total cost of completion would be under John Fischer's calculations, and nothing in the briefing sheds any light on this theory of the case.[8] For these reasons we cannot regard his testimony as in derogation of the reasonableness of Fireman's completion costs, nor as in support of the verdict of the jury.

The issue thus turns on the probity of Raymond Fischer's testimony. On the basis of his own cost accounting records, he testified that the value of work remaining to be completed in the contracts was $188,000 and that he and his brother could have completed the work for $87,000, resulting in a total loss of $30,000 after completion and paying all bills. The manner in which the $30,000 loss was calculated was never explained, nor was there any explanation of how work valued at $188,000 could be completed for $87,000. The briefing is also noticeably deficient in this respect. The $188,000 in work to be completed is likewise without a rational basis. Raymond Fischer obtained that figure by subtracting the amount earned on the contracts (plus the value of materials on the job sites) from the total bid price of the contracts. This calculation rested on the assumption that Fischers' total bid price was equivalent to the actual cost of performance. The validity of this assumption is completely dissipated by the fact that he was unable to pay bills of $400,000 on the contracts to the time of Fireman's intervention.

We do not think Raymond Fischer's testimony provides any support for the $200,000 verdict, not do we think it de-

8. The only support for the verdict offered by the Fischers' brief was that the cost of completion should have been $35,000 rather than the $317,000 actually spent, reducing the net loss to approximately $218,000. This calculation was based on labor costs alone and failed to take account of the other obvious costs incurred under the completion contracts.

tracts from the reasonableness of Fireman's admitted net loss. Fireman's is, therefore, entitled to judgment n. o. v. for the full amount of its admitted net loss.

Inasmuch as the Fischers' liability under its indemnity agreement with Fireman's was not in any way contingent on the existence of fraud, the verdict of the jury absolving the Fischers of fraud is of no consequence. It neither added to nor detracted from the right of recovery on the indemnity agreement. And, in any event, we are unwilling to say that the Fischers were guilty of fraud as a matter of law. The judgment is accordingly reversed and remanded with instructions to enter judgment for the sum of $555,928.97. And since the amount was readily ascertainable on the date of Fireman's motion for summary judgment on its claim, interest will be awarded from that date.