Leo PARSONS, Plaintiff, Appellant,

v.

AMERADA HESS CORPORATION, Defendant, Appellee, Appellant,

v.

B & M SERVICE COMPANY, Inc., Third Party Defendant, Appellee.

Nos. 140–69, 141–69, 142–69.

United States Court of Appeals, Tenth Circuit.

Feb. 27, 1970.

Warren F. Reynolds, Hobbs, N. M., for plaintiff, appellant.

Rufus E. Thompson, Roswell, N. M. (John S. Miller, Tulsa, Okl., on the brief), for defendant, appellee, appellant.

Ray C. Cowan, Hobbs, N. M., for third party defendant, appellee.

Before MURRAH, Chief Judge, LEWIS and HOLLOWAY, Circuit Judges.

MURRAH, Chief Judge.

This appeal from a summary judgment involves the tort liability of Amerada Petroleum Corporation to an employee of its independent contractor, B & M Service Company. And it also involves the contract liability of B & M to Amerada for losses incurred in the successful defense of the employee's wrongful death action. The primary appeal is from a judgment of nonliability of Amerada on the tort claim. The cross-appeal is from that part of the judgment in which the trial court refused, as unnecessary, to adjudge the liability of B & M to Amerada under their conventional indemnity contract. The ultimate question is whether, resolving all factual doubts against the summary judgment, a genuine issue of fact survived the pleadings, affidavits, documentary and depositional evidence. Fischer Construction Company v. Fireman's Fund Ins. Co., 420 F.2d 271 (10th Cir.). The relevancy and conclusiveness of the record facts depend upon the nature of the legal duty imposed on Amerada to B & M's employee by applicable New Mexico law.

■ The basic facts are that Amerada entered into a "master well and lease service contract" with B & M governing all work to be performed by B & M under subsequent verbal or written orders for any type of service on or about wells or leases, including but not limited to, labor, technical service, and the repair, maintenance or installation of material or equipment. The agreement provided that "Amerada [was to] have no direction or control of contractor or its employees or agents except the results to be obtained." While the contract is not conclusive evidence of the legal relationship of the parties, it is to be sure cogent evidence of it. King v. Southwestern Greyhound Lines, 169 F.2d 497 (10th Cir.). And there does not seem to be any doubt that the relationship of Amerada and B & M was that of employer and independent contractor.

In August, 1966, Amerada verbally ordered B & M to clean a designated crude oil storage tank at one of its producing oil and gas leases near Hobbs, New Mexico. A Mr. Perchard and the decedent Parsons, a young dental student with some oil field experience who had been hired that day, were sent by B & M to perform the work. They proceeded to the lease in a B & M truck with equipment designed to perform the work assignment. No Amerada employees were present at the time Perchard and Parsons arrived at the tank or at any time during the performance of the work. The tank was used for storage of sour crude oil containing hydrogen sulfide, a deadly poisonous gas, which can be detected in small quantities by the odor of rotten eggs but is undetectable in concentrated quantities. Upon arrival, Perchard removed the hatch at the top of the tank to permit the escape of gas and fumes. They then unbolted and removed the upper "clean out plate," and Perchard cautioned Parsons that the escaping gas was dangerous and to stand where he "wouldn't breathe it." The two stood so that the wind was blowing away from them until it "quieted down." They then placed a hose in the tank and connected it to a suction pump on the truck to pump out the small amount of oil and sediment in the conically shaped bottom of the tank.

After the pumping process had been completed, a small amount of sediment remained on the "gauge plate," making it necessary to go into the tank to clean it. They took a gas mask provided by B & M off the truck and fitted it onto Parsons. The mask was fitted around the face and buckled to Parsons' body. An air hose was extended in the direction of the wind and staked down. Parsons entered the tank, walked to the gauge plate, wiped it, turned around, walked toward the entrance and fell inside, instantaneously removing the mask. Perchard immediately entered the tank and was able to get Parsons' head and shoulders out of the tank. He did not respond to artificial respiration and never regained consciousness. Death was attributed to hydrogen sulfide tox-

icity from the hydrogen sulfide in the tank.

B & M did not specialize in cleaning tanks, but it was one of the services it contracted to do. Perchard was not a tank cleaning specialist but in the course of his employment he did perform this service for B & M. In his 18 years with B & M he had probably cleaned a hundred or more tanks, sometimes as many as 15 a year, and Perchard was aware that the gas found in tanks which had contained sour crude was poisonous. He and another helper had cleaned another tank containing sour crude about two weeks before using the same gas mask furnished for this purpose and used on this particular day. There were no signs warning of dangerous gas at the work site, nor did any employee of Amerada undertake to instruct or direct the manner and the means of cleaning out the tank.

Parsons was covered by B & M's Workmen's Compensation, and statutory benefits have been paid. This suit by the decedent's administrator seeks to impose liability on Amerada for negligently failing to exercise reasonable care to warn or protect Parsons from the dangerous condition created by the presence of the hydrogen sulfide gas.

■ We start with a clear statement of New Mexico law which permits third persons to recover from an employer for the negligence of his independent contractor when the performance of the contracted work is inherently dangerous. *Pendergrass v. Lovelace*, 57 N.M. 661, 262 P.2d 231. The reason for this exception to the general rule of nonliability of an employer for the negligence of his independent contractor seems to be that the duty of the due care owing to third persons in the performance of extrahazardous work should, as a matter of public policy, be nondelegable. And this is so even though the employer is at pains to select a competent contractor and retains no control over the manner or the means of the performance of the contracted work.

The New Mexico court has not yet said whether employees of an independent contractor are included within the protected class of third persons when the performance of the contracted work is inherently dangerous.[1] But the administrator is sure that it would do so in a case like ours. The basis for this assurance is the restatement of the decisional law found in Sections 413, 416 and 427 of the Restatement 2d, Torts, which under variant conditions subjects the employer of an independent contractor to liability "to others" when the work to be performed is likely to create a peculiar unreasonable risk of physical harm unless special precautions are taken[2] or

---

1. There is a definite split of authority whether this exception extends to employees of the contractor. Some of the cases holding that the duty extends to employees of the contractor are: Watson v. Black Mountain Ry. Co., 164 N.C. 176, 80 S.E. 175; Mallory v. Louisiana Pure Ice and Supply Co., 320 Mo. 95, 6 S.W.2d 617; Jennings v. Vincent's Adm'x, 284 Ky. 614, 145 S.W.2d 537; International Harvester Co. v. Sartain, 32 Tenn.App. 425, 222 S.W.2d 854; Grogan v. United States, 225 F.Supp. 821 (D.C.Ky.). Other cases hold that employees of the independent contractor are not within the protected class. Humphreys v. Texas Power & Light Company, 427 S.W.2d 324 (Tex.Civ.App.); Welker v. Kennecott Copper Co., 1 Ariz.App. 395, 403 P. 2d 330; Epperly v. City of Seattle,

65 Wash.2d 777, 399 P.2d 591; Florida Power & Light Co. v. Price, 170 So.2d 293 (Fla.); Corban v. Skelly Oil Co., 256 F.2d 775 (5th Cir.); Sword, Houston Fire & Cas. Ins. Co., Intervener v. Gulf Oil Corp., 251 F.2d 829 (5th Cir.); Hurst, Employers Cas. Co., Intervener v. Gulf Oil Corp., 251 F.2d 836 (5th Cir.).

2. § 413. Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor

One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused

when a special danger inheres in or is normal to the work.[3] Some courts have construed the phrase "to others" as used in those sections to include employees of an independent contractor. Woolen v. Aerojet General Corporation, 57 Cal.2d 407, 20 Cal.Rptr. 12, 369 P.2d 708; Giarratano v. Weitz Company, 259 Iowa 1292, 147 N.W.2d 824; Hagberg v. City of Sioux Falls, 281 F.Supp. 460 (D.C.S.D.).

In support of the thesis that New Mexico would follow these cases, the administrator relies heavily on DeArman v. Popps, 75 N.M. 39, 400 P.2d 215. That case was a suit by an employee of an independent contractor against the employer of the contractor who furnished and supervised the use of a chattel by the employees of the contractor in the performance of the contracted work. DeArman was injured while using the chattel. And the New Mexico court adopted and applied Section 414[4] (a member of the same family of sections of the Restatement as Sections 413, 416 and 427) and Section 392[5] of the Restatement 2d, Torts, to hold the employer liable to the employee.

The question confronting us is whether, as the administrator insists, the language in DeArman indicates to a federal court making an Erie educated guess that New Mexico would adopt Sections 413, 416 and 427 and apply them to employees of an independent contractor. It is suggested that since Section 414 imposes a duty on the employer of an independent contractor "to others" and the New Mexico court interpreted that phrase to include employees of an independent contractor, it is only reasonable to assume that the New Mexico court would also adopt Sections 413, 416 and 427 and similarly construe them. Indeed, the California Supreme Court has so reasoned. Woolen v. Aerojet General Corporation, supra.

Judge Bratton faced this critical issue squarely. Upon examination of the briefs filed with the Supreme Court of

to them by the absence of such precautions if the employer
 (a) fails to provide in the contract that the contractor shall take such precautions, or
 (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

§ 416. Work Dangerous in Absence of Special Precautions
One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

3. § 427. Negligence as to Danger Inherent in the Work
One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to

such others by the contractor's failure to take reasonable precautions against such danger.

4. § 414. Negligence in Exercising Control Retained by Employer
One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

5. § 392. Chattel Dangerous for Intended Use
One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied
 (a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or
 (b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

New Mexico in DeArman, he found that Section 416 had been urged before that court as a basis of liability and that the court had significantly refrained from applying that section as a legal basis for liability. He was thus satisfied that liability in DeArman was founded squarely on the element of control and supervision of the use of the chattel. He was consequently not persuaded that the adoption of Section 414 and the interpretation of the phrase "to others" to embrace employees of an independent contractor was indicative that the New Mexico court would adopt and similarly construe Sections 413, 416 and 427. He reasoned that in the absence of a clear expression of New Mexico law the general rule announced by this court in Eutsler v. United States, 376 F.2d 634, should be followed. In that case, we recognized that some courts had construed the phrase "to others" to include employees of an independent contractor, but we thought that the better reasoned rule was that employees of an independent contractor are not embraced with the phrase "to others." See also United States v. Page, 350 F.2d 28 (10th Cir.), cert. denied 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470.

■ In situations like this, we have often accepted the federal trial judge's interpretation of his state's law unless convinced that he is clearly wrong. Manville v. Borg-Warner Corporation, 418 F.2d 434 (10th Cir.). We certainly cannot say that he was clearly wrong in this case. Until, therefore, New Mexico has spoken more explicitly to our subject, we must conclude that an employee of an independent contractor is not within the class of third persons to whom the employer of the independent contractor owes the nondelegable duty of due care while such employee is engaged in the performance of inherently dangerous contracted work.

■ This brings us to the alternative theory of liability best stated in Sections 343 and 343A,[6] Restatement 2d, Torts, and found in the segment of Chapter 13 dealing with the special liability of possessors of land to invitees. Section 343 subjects a possessor of land to liability for physical harm caused to an invitee by a dangerous condition on the land, provided the possessor (1) knows or in the exercise of reasonable care would discover the condition and appreciates that it poses an unreasonable risk of harm to invitees, (2) should anticipate that the invitees would not discover the danger or would not protect themselves against the condition and (3) fails to exercise reasonable care to protect his invitees. Related Section 343A provides that the possessor of land is not liable for physical harm to his invitees caused by a dangerous condition on the land which danger is known or obvious to the invitee, unless the possessor should anticipate harm despite such knowledge or obviousness of the dangerous condition. These sections considered in pari materia were designed to provide a different species of liability based on a different

6. § 343. Dangerous Conditions Known to or Discoverable by Possessor
A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger.

§ 343A. Known or Obvious Dangers
(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.
(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

concept of duty from that embodied in Sections 413, 416 and 427.

Accepting Sections 343. and 343A as the law of New Mexico and their applicability to Parsons as a business invitee, our inquiry is the nature of the duty owing under Sections 343 and 343A by a possessor of land or one in charge of premises to an invitee engaged in the performance of inherently dangerous work on the premises when the possessor or one in charge exercises no control or direction over the performance of the contracted work. The Supreme Court of New Mexico has adopted and applied Section 343 to "slip and fall" business invitees, Crenshaw v. Firestone Tire & Rubber Company, 72 N.M. 84, 380 P.2d 828, and Sandoval v. Board of Regents of New Mexico State University, 75 N.M. 261, 403 P.2d 699, and to unguarded dangerous conditions on the premises (stairwell in a storeroom). Mozert v. Noeding, 76 N.M. 396, 415 P.2d 364. In Sandoval, the state court reversed summary judgment for the defendant on the ground that a material issue of fact subsisted as to the manner in which the walkway on which plaintiff slipped was finished. And in Mozert, the New Mexico court reversed a directed verdict for the defendant on the ground that reasonable minds could differ whether plaintiff was guilty of contributory negligence proximately causing her injuries. In Crenshaw, however, the court upheld a summary judgment for the defendant on the ground that reasonable men could not disagree that the danger was universally known and equally apparent to the plaintiff and defendant. See also Dempsey v. Alamo Hotels, Inc., 76 N.M. 712, 418 P.2d 58, and cf. Demarest v. T. C. Bateson Construction Company, 370 F.2d 281 (10th Cir.).

Applying our concept of applicable Utah law in Titan Steel Corporation v. Walton, 365 F.2d 542 (10th Cir.), we subjected a general contractor to liability for negligent harm to an employee of an independent contractor because as in DeArman, supra, the facts showed that the general contractor retained and exercised control over the performance of the contract, i. e. a Section 414 situation. At the same time following Gulf Oil Corporation v. Bivins, 276 F.2d 753 (5th Cir.), we recognized the conditions of liability of a possessor of land or one in control of the premises to an employee of an independent contractor under Section 343. And we attempted to point out the significant distinction between the nonliability of an employer for negligent harm to an employee incidental to or resulting from the performance of inherently dangerous contracted work and the liability of a possessor of premises for negligent harm to an employee of an independent contractor proximately caused by unsafe conditions inhering in the premises where the work is being done, i. e. hidden or latent danger.

In Texaco, Inc. v. Pruitt, 396 F.2d 237 (10th Cir.), we developed more precisely the nature of the duty to warn or guard against hidden or latent dangers on the premises. In that case, the owner of the premises exercised no control or direction over prosecution of the contracted work, and Section 414 was therefore inapplicable. Liability turned instead on the breach of the duty to warn or protect against hidden or latent dangers on the premises. We upheld the trial court's judgment which left to the jury the issue whether the owner of the premises had fulfilled its legal duty to warn against hidden dangers on the premises which caused or contributed to the employee's injury. In neither Titan nor Pruitt were we confronted with the duty of the owner of the premises to warn of a latent danger in the performance of inherently dangerous contracted work.

Our case seems to be more like Gulf Oil Corporation v. Bivins, supra, involving the application of Section 343 to the performance of inherently dangerous contracted work. In that case, the court was satisfied of the sufficiency of the evidence to support the jury's findings "that the premises contained an inherent, concealed or latent danger [of which the employee business-invitee was unaware]." The judgment on the jury verdict was vacated on the grounds that the employer of the contractor had as a

matter of law fulfilled its duty to warn of the latent danger.

·The administrator would have us hold that the jury should be permitted to find that the presence of hydrogen sulfide gas in lethal quantities in the tank was a latent danger on the premises within the meaning of Section 343 rather than a special danger incident to the performance of inherently dangerous contracted work. In support of his contention that the presence of hydrogen sulfide gas in the tank was a latent danger within the meaning of Section 343, the administrator refers to a manual issued by the American Petroleum Institute dealing with the cleaning of tanks and asserts that Amerada was chargeable with knowledge of its contents. The administrator specifically relies on sections of the manual which state that special precautions are required for safe cleaning of tanks that ·have contained sour stocks, that when work is done on such tanks respiratory equipment which provides an independent air supply should be worn by workers and that excessive exposure to hydrogen sulfide gas causes death. In sum, the administrator contends that Amerada had superior knowledge of an extraordinarily dangerous condition on the premises and was under duty to warn or take proper precautions to protect the business invitee from the unusual risk of harm.

It cannot be denied that the work to be performed was inherently dangerous, i. e., the very doing of the work posed an unusual risk of physical harm in the absence of special precautions. Everyone, including the decedent, knew of the danger inherent in the performance of the work and realized the necessity of taking special precautions to make the work safe. The contractor and his employees did in fact take precautions usually adequate for the cleaning of tanks containing hydrogen sulfide gas. In this instance the danger was apparently greater than anyone anticipated, and the safety devices usually employed proved inadequate. This much is clearly established.

Our decisive question is whether liability of the employer under Section 343 should be made to turn on a fact finding that the presence of the hydrogen sulfide gas in the tank in lethal quantities posed an unreasonable risk of harm on the premises of which Amerada was charged with superior knowledge and the consequent duty to warn the employees of the contractor performing known hazardous work. In other words should the owner of the premises be subject to liability for physical harm to an employee of an independent contractor caused by a special danger encountered by the employee of the contractor while engaged in the performance of the inherently dangerous work.

We do not so construe Section 343 as applied in Bivins. We do not read Bivins to impose liability on the owner of premises for physical harm proximately caused to an employee of a contractor by a latent danger incident to the performance of known dangerous work. If Sections 413, 416 and 427 were applicable here, we would have no difficulty subjecting the employer to liability under these circumstances. And it seems only reasonable and logical to say that if duty and consequent liability are to be imposed on the employer for physical harm to an employee of his independent contractor arising out of an unreasonable risk of harm incident to the performance of the work the liability should be lodged in these sections, not in 343 which is intended to impose a duty on the owner of the land to appreciate and warn of a dangerous and latent condition on his premises. It does not seem logical nor reasonable to subject the owner of premises to liability under Section 343 for the peril posed by these circumstances when we are unwilling to do so under Sections 413, 416 and 427. Again until New Mexico speaks on the subject, we agree with the trial court that liability cannot be imposed under Section 343 in situations like this. We conclude that no material issue of fact survived, and the summary judgment was appropriate. In this posture of the case we do not reach the asserted defense of assumption

of risk and contributory negligence as recognized and applied in New Mexico, i. e. see Demarest v. T. C. Bateson Construction Company, supra.

■ The cross-appeal concerns the liability of B & M to Amerada for expenses incurred by Amerada in defense of the wrongful death action. Amerada filed a Third Party Complaint alleging that B & M was contractually bound to indemnify Amerada not only for any judgment and costs which the administrator might recover but also for any and all expenses incurred by Amerada in defense of the tort claim. B & M filed an Answer in which it admitted existence of the contract but asserted various defenses to the indemnification claim. Both parties filed motions for summary judgment.

The trial judge in his Memorandum Opinion stated that the Third Party Complaint sought recovery for any damages that Parsons might recover against Amerada and concluded " * * * that the finding that Amerada is not liable precludes the necessity of making any finding with regard to whether B & M is contractually bound to indemnify it." No resolution of the indemnification claim was made on the merits. The trial judge apparently believed that dismissal of Parsons' tort claim also disposed of the claim for indemnification.

We think the trial court erroneously interpreted the Third Party Complaint. It clearly sought recovery not only of any judgment that might be assessed against Amerada but also sought recovery of expenses incurred by Amerada in defense of the tort action. B & M alleged various defenses to the Third Party Complaint, and the trial court should have determined the liability, if any, of B & M under the agreement for Amerada's expenses in defending the wrongful death action. The proceeding on the Third Party Complaint is remanded to the District Court for that purpose. And in that regard see Titan Steel Corporation v. Walton, supra.

HOLLOWAY, Circuit Judge (concurring in part and dissenting in part):

I agree with the majority opinion's treatment of the third party complaint issue and the issue of possible liability of Amerada under principles related to §§ 413, 416 and 427 of the Restatement of Torts, 2d. However, I respectfully disagree with its holding that in these circumstances as a matter of law recovery is unavailable to the administrator under principles of the duty of a possessor of land where an unreasonable risk of harm to invitees exists.

The District Court stated clearly its view as to why no recovery may be had based on the duty of a possessor of land. Its memorandum opinion rejected this theory of recovery under §§ 343 and 343A of the Restatement on the following basis:

"Assuming, as contended by plaintiff, that the death resulted from the gases in the tank, Amerada is not liable. If Amerada had a duty to warn or to make the premises safe, it was relieved of this duty by decedent's voluntary actions, taken with full knowledge of the presence of poisonous gases. Restatement (Second), Torts, supra §§ 343, 343A, 496, comment d at 570–71; Crenshaw v. Firestone Tire & Rubber Co., supra [72 N.M. 84] at 85–86 [380 P.2d 828]."

Thus, it was held that recovery on the basis of a breach of Amerada's duty as a possessor of land was not permissible because the District Court concluded that the danger involved was known or obvious and Parsons acted voluntarily. See § 343A(1), n. 6, supra. In so holding the District Court concluded that there was no genuine issue of fact as to whether Parsons knew of the danger and acted voluntarily with such knowledge. This conclusion was based on the Perchard deposition, other depositions, and circumstances including Parsons' use of a mask that was furnished.

I cannot agree that summary judgment was proper on such a basis. The conclusion rests in large part on the

deposition of Perchard. However, where the facts are peculiarly within the knowledge of an adverse party and its witnesses,[1] summary judgment is not proper and the plaintiff is entitled to have the witnesses' testimony and demeanor considered by the jury.[2] Moreover, on this record it seems to me that the inference that Parsons knew of and appreciated the special danger of lethal concentrations of hydrogen sulfide was not proper for decision as a matter of law by summary judgment.[3] For the New Mexico Court holds that " * * * a person will not be held to have voluntarily assumed a risk where the specific danger which produced the injury is unknown." [4] The special dangers related to hydrogen sulfide were not disclosed by Amerada to B & M, nor by B & M to Parsons, according to some of the summary judgment papers.[5] In short, while various facts developed in the depositions and other papers may argue that Parsons knew of

the presence of poisonous gases, to me the ultimate finding that he appreciated the special danger he faced was not one for decision by summary judgment on this record.

The majority opinion agrees with the District Court that there can be no recovery under § 343 principles, but proceeds on a different basis. In dealing with the duty of a possessor of land, the majority opinion states:

"We do not read Bivins to impose liability on the owner of premises for physical harm proximately caused to an employee of a contractor by a latent danger incident to the performance of known dangerous work. If Sections 413, 416 and 427 were applicable here, we would have no difficulty subjecting the employer to liability under these circumstances. And it seems only reasonable and logical to say that if duty and consequent liability are to be imposed on the employer

1. B & M Service Company is contesting the third party complaint by which Amerada seeks recovery over against B & M for any liability to Parsons' Administrator. Under the circumstances, B & M must be viewed realistically as an interested party and adverse to recovery by the administrator.

2. See Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967; Subin v. Goldsmith, 224 F. 2d 753, 757–759 (2d Cir.), cert. denied, 350 U.S. 883, 76 S.Ct. 136, 100 L.Ed. 779; Alvado v. General Motors Corporation, 229 F.2d 408, 411–412 (2d Cir.), cert. denied, 351 U.S. 983, 76 S.Ct. 1050, 100 L.Ed. 1497, and Alabama Great Southern R.R. Co. v. Louisville R.R. Co., 224 F.2d 1, 5, 50 A.L.R. 2d 1302 (5th Cir.).

3. See Sullivan v. Shell Oil Co., 234 F.2d 733, 739 (9th Cir.), cert. denied, 352 U.S. 925, 77 S.Ct. 221, 1 L.Ed.2d 160.

4. Tapia v. Panhandle Steel Erectors Co., 78 N.M. 86, 428 P.2d 625, 631.

5. Mr. Shirley, Amerada's farm boss, testified by deposition that in his contracts with B & M he had not at any time instructed them as to proper equipment to use and warned them of dangerous gases. He called B & M to clean this tank and gave no such information. Mr.

Dunn, the B & M field superintendent, testified by deposition that he hired Parsons the day of the accident and did not inquire about his prior experience on tank cleaning, nor instruct him on precautions to be taken. Parsons had worked for another oil company for three summers and attended safety meetings where masks were discussed. There was no sign on the tank about poisonous gases.

Mr. Perchard, a B & M employee, stated that he had told Parsons there was dangerous gas there, and to stay downwind (sic) and not to stand in the gas and breath it. There was no proof that Perchard knew of or discussed with Parsons the characteristics of hydrogen sulfide, such as its being colorless, odorless and quickly lethal in heavy concentration, and heavier than air. Perchard said that after pumping out sediment from the tank, they rested about fifteen minutes to let the tank air out.

There is data in the record on such characteristics of hydrogen sulfide showing that it is colorless, and that in heavy concentration it deadens the sense of smell and may kill quickly. The gas is heavier than air, which is significant in view of the cone-shaped bottom of the tank. The record shows knowledge by Amerada that crude oil from the Abo Formation was generally thought to contain hydrogen sulfide.

for physical harm to an employee of his independent contractor arising out of an unreasonable risk of harm incident to the performance of the work the liability should be lodged in these sections, not in 343 which is intended to impose a duty on the owner of the land to appreciate and warn of a dangerous and latent condition on his premises. It does not seem logical nor reasonable to subject the owner of premises to liability under Section 343 for the peril posed by these circumstances when we are unwilling to do so under Sections 413, 416 and 427. Again until New Mexico speaks on the subject, we agree with the trial court that liability cannot be imposed under Section 343 in situations like this."

Thus, the majority opinion determines that even though a latent danger be involved, as a matter of law it was "incident to the performance of known dangerous work," and that no duty or liability may exist under § 343 principles. I cannot agree. The District Court did not find such an exception to § 343 principles under New Mexico law. New Mexico decisions before us do not state such an exception. And to me the case law relied on by the majority opinion does not go so far as to make such an exception to the principles of § 343.

The majority opinion refers to cases making a distinction between a risk of harm incident to performance of the work, and latent dangers inhering in the premises where recovery within § 343 principles may be had. However, I believe the cases show that the distinction cited refers to risks of harm reasonably

*known* to be incident to the work, and not to risks which are not known and appreciated as dangers of the work.[6] And reason calls for such an exception to the duties of the possessor of land to be thus limited to risks of harm reasonably known to be incident to the work of the business invitee. If the danger is not thus known and appreciated as a risk incident to the work, then a contractee who is the possessor of the land where the latent danger exists still has a duty under § 343 to protect the independent contractor and his employees.

To me Gulf Oil Corporation v. Bivins, supra, does not deny the applicability of § 343 principles here. In fact, the Court there said that proof of the presence of iron sulfide gas at the wellhead would support the jury finding of an inherent, concealed or latent danger unknown to Bivins, and quoted § 343 on the duty of the possessor of land to the independent contractor's employees, although recovery was denied because the contractor had been warned specifically about the presence of iron sulfide gas. Under § 343 principles recovery may be had where the possessor of land violates his duty to warn the independent contractor's employees of danger unknown to them, even though the risk might be viewed as a "latent danger incident to the performance of known dangerous work" within the terms of the majority opinion's exception to § 343 principles.[7]

New Mexico has adopted the principles of § 343.[8] Moreover the definition in § 332 of the business invitees within the protection of § 343 was also em-

6. See e. g., Wolczak v. National Electric Products Corp., 66 N.J.Super. 64, 168 A.2d 412, 417.

7. See Sullivan v. Shell Oil Co., supra (reversing a directed verdict for defendant and remanding for trial where a column in a tank being dismantled collapsed); Gulf Oil Corp. v. Wright, 236 F.2d 46, 62 (ordering a retrial to determine possible liability where the contractor's employee was apparently killed by poisonous gas while cleaning pits); Haefeli v. Woodrich Engineering Co.,

255 N.Y. 442, 175 N.E. 123 (sustaining recovery where a cesspool scavenger's death was caused by the collapsing roof of the pool); and Hall v. Henry Thayer & Co., 225 Mass. 151, 113 N.E. 644 (sustaining recovery for death of an independent contractor's employee repairing a water tank when a pier gave way and the tank fell).

8. See Crenshaw v. Firestone Tire and Rubber Co., supra, and Sandoval v. Board of Regents of New Mexico State University, supra.

braced in the *Sandoval* case, and the definition covers independent contractors and their employees.[9] And in New Mexico there must be an appreciation of the specific dangers involved for there to be an assumption of risk.[10] So, I am unable to agree with the majority opinion's view that even if the risk was a latent danger, it was encountered in the performance of "known dangerous work" so that § 343 principles may not apply. Furthermore the record does not negate sufficiently, for summary judgment purposes, possible liability of the possessor of land under § 343A(1) for harm that should be anticipated despite knowledge or obviousness of danger, in view of the characteristics of hydrogen sulfide.

Therefore, I respectfully disagree with the affirmance of the summary judgment by the majority opinion because I feel it does so by an unwarranted constriction of § 343 principles.

---

9. § 332 of the Restatement of Torts, 2d, provides:

"A business visitor is a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them."

10. See Tapia v. Panhandle Steel Erectors Co., supra, 78 N.M. 86, 428 P.2d at 631, and data on some characteristics of hydrogen sulfide, n. 5, supra.